## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

MARY J. HAMRICK, DAVID B.
BECKLEY, and VALENTIN RODRIGUEZ,
on behalf of themselves and all others
similarly situated,

　　　　　　Plaintiffs,

　　vs.

E.I. DU PONT DE NEMOURS AND
COMPANY, the ADMINISTRATION
COMMITTEE OF THE DUPONT
PENSION AND RETIREMENT PLAN, and
JOHN/JANE DOES 1-5,

　　　　　　Defendants.

Civil Action No.:

**CLASS ACTION COMPLAINT**

Plaintiffs, Mary J. Hamrick, David B. Beckley, and Valentin Rodriguez through their attorneys, on behalf of themselves and all others similarly situated, allege:

## INTRODUCTION

1.　　This is a class action against E.I. du Pont de Nemours and Company ("DuPont"), the Administrative Committee of the DuPont Pension and Retirement Plan (the "Committee"), and the Committee's members (collectively, "Defendants") concerning their failure to calculate benefits for participants that select the Income-Leveling Option ("ILO") under Title I of the DuPont Pension and Retirement Plan (the "Plan") using the actuarial assumptions required by section 205(g) of the Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. § 1001, *et seq*.

1

2.      The Plan is a defined benefit pension plan comprised of several parts, which DuPont calls "Titles."  Under Title I, participants earn benefits in the form of a single life annuity ("SLA") beginning at age 65 but can start receiving their benefits as early as age 50.

3.      Participants that commence their benefits before age 62 can select the Plan's Income-Leveling Option ("ILO"). The ILO modifies the flat monthly pension benefit that the participant would receive for life under the Plan, increasing the participant's benefits before age 62 to account for the fact that participants are not yet eligible to begin their Social Security benefits. Participants' benefits under the ILO then decrease when they reach age 62, attempting to provide them with equal monthly income before and after age 62 when their Plan benefits are combined with their Social Security benefits.

4.      In simple terms, participants borrow against their flat stream of lifetime benefits under the Plan when they select the ILO, receiving higher monthly amounts before Social Security benefits commence in exchange for lower monthly benefits after Social Security benefits commence.

5.      ERISA allows plans to offer ILOs.  However, the statute requires plans to use specified actuarial assumptions when calculating ILO benefits.  For accelerated forms of benefit like ILOs (or lump sums), ERISA § 205(g) requires that plans use "the applicable mortality table and the applicable interest rate," actuarial assumptions published by the Treasury Department, which are based on current mortality rates of pension plan participants and market interest rates.

6.      During all relevant times, Defendants did not use the Treasury Assumptions to calculate ILO benefits.  Defendants instead used an antiquated formula comprised of an interest rate that was higher than the "applicable interest rate," and a mortality table that DuPont developed in 1985 that is materially different from the "applicable mortality table." The net result from Defendants' failure to use the Treasury Assumptions is that Plaintiffs' and each Class member's ILO benefits are lower than ERISA § 205(g) requires.

7.      Accordingly, Plaintiffs seek an order from the Court (1) declaring that the conversion factors used to determine ILO benefits violate ERISA § 205(g); (2) requiring Defendants to pay all amounts improperly withheld in the past; (3) requiring Defendants to recalculate Plaintiffs' and the Class's ILO benefits in a manner consistent with ERISA's requirements; (4) requiring Defendants to increase the amounts of Plaintiffs' and the Class's future benefit payments; and (5) such other relief as the Court determines to be just and equitable.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

9.      This Court has personal jurisdiction over Defendants because they transact business in, or reside in, and have significant contacts with this District, and because ERISA provides for nationwide service of process. DuPont is headquartered in this District,

and, upon information and belief, the Committee and its members are also based in, and can be found in, this District.

10.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all the violations of ERISA occurred in this District and Defendants may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because DuPont does business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## PARTIES

### Plaintiffs

11.     Plaintiff Mary J. Hamrick is a Plan participant who worked for DuPont for over 30 years.  Ms. Hamrick is receiving her Plan benefits as an SLA with an ILO.

12.     Plaintiff David B. Beckley is a Plan participant who worked for DuPont for over 25 years.  Mr. Beckley is receiving his Plan benefit as a 50% Spousal Benefit Option with an ILO, with his wife as the beneficiary.

13.     Plaintiff Valentin Rodriguez is a Plan participant who worked for DuPont for over 30 years.  Mr. Rodriguez is receiving his Plan benefits as an SLA with an ILO.

### Defendants

14.     Defendant E.I. du Pont de Nemours and Company is a corporation formed under Delaware law with its principal place of business in Wilmington, Delaware.  DuPont is a wholly owned subsidiary of Corteva, Inc.

15.     Defendant the Administrative Committee a/k/a the Benefits Plans Administrative Committee is an unincorporated association with a principal place of business in Wilmington, Delaware.  The Committee is the Plan's named fiduciary and the Plan Administrator within the meanings of ERISA §§ 402(a)(2) and 3(16)(A), 29 U.S.C. §§1102(a)(2) and 1002(16)(A).

16.     The Committee "control[s] and manage[s] the operation of the Plan and administer[s] the Plan."  Plan, Title I at § 2.

17.     John/Jane Does 1-5 are the individual members of the Committee responsible for administrating the Plan during the Class Period.  Their names and identities are not currently known.  Members of the Committee are appointed by, and can be removed by, DuPont's Director of Global Rewards.

## SUBSTANTIVE ALLEGATIONS

**I.    The Plan**

    **A.    Overview**

18.     The Plan is a defined benefit plan which covers eligible employees of DuPont and its affiliates.  The Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and a "defined benefit plan" within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

19.     The Plan is divided into seven parts, which DuPont calls "Titles." Each Title has its own benefit formula that applies to a specific group of DuPont employees.  This case is about Title I of the Plan, which is entitled "Benefits for Persons Employed By E.I. du Pont de Nemours and Company" ("Title I").

20.    Under Title I, participants earn pension benefits in the form of a monthly benefit payable for their lives, a single life annuity ("SLA"), beginning at age 65.  Plan, Title I at § IV.A(2), § IX.B and § III.  The age-65 SLA that participants accrue is based on their average monthly compensation and years of service, among other factors.  *Id*. at § IV.A(2).

21.    Participants with more than 15 years of service can start receiving their pension benefits at age 50.  Plan Document, Title I, §§ IV.B and D.  When a participant starts receiving benefits before age 65, Defendants first calculate the benefits as an age-65 SLA and then as an SLA that is payable to the participant at the participant's age when the benefits begin.  *Id*. at B.[1]  To calculate the early retirement SLA, Defendants apply Title I's early retirement factors, which are stated as a percentage of the participant's age-65 SLA.[2]

22.    Title I's early retirement factors differ based on the participant's age and years of service.  Participants meeting specified requirements can receive an SLA that is unreduced compared to the age-65 SLA.  Figure 1, below, shows Title I's early retirement factors.

---

[1]    The amount of each pension benefit is rounded up to the nearest dollar under the Plan.  Plan, Title I at § IX.D.  For example, if a participant's benefit as calculated under the Plan's terms is $900.02 a month, the participant will receive a benefit of $901.00.
[2]    For example, if the factor is 95% at age 62, participant retiring at age 62 would receive an SLA that is 95% of their age-65 SLA.

**Figure 1**

| AGE AT COMMENCEMENT OF PAYMENT | 15 THROUGH 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 AND OVER |
|---|---|---|---|---|---|---|---|---|
|  | | | **SERVICE YEARS** | | | | | |
| 65 | 100% | | UNREDUCED PENSION | | | | | |
| 64 | 95 | 100% | | | | | | |
| 63 | 90 | 95 | 100% | | | | | |
| 62 | 85 | 90 | 95 | 100% | | | | |
| 61 | 80 | 85 | 90 | 95 | 100% | | | |
| 60 | 75 | 80 | 85 | 90 | 95 | 100% | | |
| 59 | 70 | 75 | 80 | 85 | 90 | 95 | 100% | |
| 58 | 65 | 70 | 75 | 80 | 85 | 90 | 95 | 100% |
| 57 | 60 | 65 | 70 | 75 | 80 | 85 | 90 | 95 |
| 56 | 55 | 60 | 65 | 70 | 75 | 80 | 85 | 90 |
| 55 | 50 | 55 | 60 | 65 | 70 | 75 | 80 | 85 |
| 54 | 50 | 50 | 55 | 60 | 65 | 70 | 75 | 80 |
| 53 | 50 | 50 | 50 | 55 | 60 | 65 | 70 | 75 |
| 52 | 50 | 50 | 50 | 50 | 55 | 60 | 65 | 70 |
| 51 | 50 | 50 | 50 | 50 | 50 | 55 | 60 | 65 |
| 50 | 50 | 50 | 50 | 50 | 50 | 50 | 55 | 60 |

23.     In addition to an SLA, participants may receive their Plan benefits as a "Spousal Benefit Option" (SBO), which is the Plan's terminology for a joint and survivor annuity.  Title I offers a 50% SBO and a 75% SBO. A 50% SBO provides full benefits during the life of the participant, and 50% of those benefits to the surviving spouse after the participant dies. A 75% SBO provides 75% of the benefits to the surviving spouse. Plan, Title I at §§ VI.(D) and (E).

**II.     Title I's Income-Leveling Option**

24.     Title I participants that retire before age 62 can chose the ILO.  Under the ILO, participants have their "pension increased to age 62 and reduced thereafter…to provide…a level retirement income before and after Federal Social Security payments begin."  Plan, Title I at § IV.E; *see also* Title I, Summary Plan Description ("SPD") at 12

("Plan payments are increased until Social Security becomes payable and decreased thereafter.")

25.    Figure 2, below, is an image from the Plan's SPD that illustrates the payment stream  that a hypothetical participant would receive "With" and "Without" the ILO.

**Figure 2**



26.    The ILO can be combined with any benefit form offered under Title I.  To calculate the ILO, Defendants first calculate the amount payable under the participant's selected form (e.g., SLA, 50% SBO, etc.). Plan, Title I at § IX.A(c)(4); § VI.D(6)(b) (calculations for 50% SBO are "made prior to the determination of amounts under the [ILO]"), and § VI.E(4)(b) (same for 75% SBO).  Then, the participant's "Primary Social Security Benefit" (PSSB), the estimated amount of Social Security benefits that a participant will be eligible to receive at age 62, is factored in to determine the ILO.

27.    To calculate the ILO, the Plan applies a conversion factor.  Plan, Title I at § IX.A(c)(4). The conversion factors are determined using Appendices A and B of Title I.

28.    Appendix A provides the discount rate assumption, which is "established quarterly" using the Pension Benefit Guaranty Corporation's (PBGC) index for lump sum payments, rounded to the nearest whole percentage and subject to a 5% minimum and a 15% maximum.  Plan, Title I at Appendix A.

29.    Appendix B contains separate tables of conversion factors for each whole number interest rate between 5 and 15% in Appendix A.  Each table in Appendix B has a separate conversion factor for the participant's age at retirement.  The conversion factors are applied to the monthly benefit amount determined for each benefit form (e.g., SLA, 50% SBO, etc.) in the same way.  Figure 3 is a reproduction of the table of factors in Appendix B when a 5% interest rate is used under Appendix A.

**Figure 3**

| | | | | | | MONTHS | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AGE OF RETIREMENT | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 61 | .9149 | .9220 | .9291 | .9362 | .9432 | .9503 | .9574 | .9645 | .9716 | .9787 | .9858 | .9929 |
| 60 | .8388 | .8451 | .8515 | .8578 | .8641 | .8705 | .8768 | .8832 | .8895 | .8958 | .9022 | .9085 |
| 59 | .7706 | .7762 | .7819 | .7876 | .7933 | .7990 | .8047 | .8104 | .8160 | .8217 | .8274 | .8331 |
| 58 | .7092 | .7143 | .7195 | .7246 | .7297 | .7348 | .7399 | .7450 | .7501 | .7552 | .7603 | .7655 |
| 57 | .6540 | .6586 | .6632 | .6678 | .6724 | .6770 | .6816 | .6862 | .6908 | .6954 | .7000 | .7046 |
| 56 | .6040 | .6082 | .6123 | .6165 | .6207 | .6248 | .6290 | .6332 | .6373 | .6415 | .6456 | .6498 |
| 55 | .5588 | .5626 | .5663 | .5701 | .5739 | .5776 | .5814 | .5852 | .5889 | .5927 | .5965 | .6003 |
| 54 | .5177 | .5212 | .5246 | .5280 | .5314 | .5349 | .5383 | .5417 | .5451 | .5485 | .5520 | .5554 |
| 53 | .4804 | .4835 | .4866 | .4897 | .4929 | .4960 | .4991 | .5022 | .5053 | .5084 | .5115 | .5146 |
| 52 | .4464 | .4492 | .4520 | .4549 | .4577 | .4606 | .4634 | .4662 | .4691 | .4719 | .4747 | .4776 |
| 51 | .4153 | .4179 | .4205 | .4231 | .4257 | .4282 | .4308 | .4334 | .4360 | .4386 | .4412 | .4438 |
| 50 | .3869 | .3892 | .3916 | .3940 | .3963 | .3987 | .4011 | .4034 | .4058 | .4082 | .4106 | .4129 |
| 49 | .3608 | .3630 | .3651 | .3673 | .3695 | .3717 | .3738 | .3760 | .3782 | .3803 | .3825 | .3847 |
| 48 | .3369 | .3389 | .3409 | .3428 | .3448 | .3468 | .3488 | .3508 | .3528 | .3548 | .3568 | .3588 |
| 47 | .3149 | .3167 | .3185 | .3204 | .3222 | .3240 | .3259 | .3277 | .3295 | .3314 | .3332 | .3350 |
| 46 | .2946 | .2963 | .2980 | .2996 | .3013 | .3030 | .3047 | .3064 | .3081 | .3098 | .3115 | .3132 |
| 45 | .2759 | .2774 | .2790 | .2806 | .2821 | .2837 | .2852 | .2868 | .2883 | .2899 | .2915 | .2930 |

FACTORS FOR INCOME LEVELING OPTION

INTEREST RATE: 5.0%

30.    The Plan's formula for the ILO is:

**Benefit before age 62** = Benefit Amount under Chosen Form ***without*** ILO
+ (PSSB x Conversion Factor)

**Benefit after age 62**   = Pre-62 Benefit – PSSB

Plan, Title I at Appendix B.

## III.    ERISA Requires the Use of Treasury Assumptions to Calculate ILOs.

31.    ERISA § 205(g) provides that "a plan may immediately distribute the present value" of a participant's benefits.   ERISA § 205(g)(2), 29 U.S.C. § 1055(g)(2).   An immediate distribution is one made before the participant attains the later of the plan's normal retirement age or age 62.   26 C.F.R. § 1.417(e)-1(b)(1). It is an early retirement benefit. The term "distribution" covers ***all*** forms of benefit. *Id*.

32.     26 C.F.R. § 1.411(a)-11(a)(2), titled "Accrued benefit," similarly provides:

> ***The value of an accrued benefit is the present value of the benefit in the distribution form determined under the plan.*** For example, a plan that provides a subsidized early retirement annuity benefit may specify that the optional single sum distribution form of benefit available at early retirement age is the present value of the subsidized early retirement annuity benefit. In this case, the subsidized early retirement annuity benefit must be used to apply the valuation requirements of this section and the resulting amount of the single sum distribution.

26 C.F.R. § 1.411(a)-11(a)(2) (emphasis added).

33.    To calculate the amount of the accrued monthly benefit, ERISA § 205(g)(3) provides that "the present value shall not be less than the present value calculated by using the applicable mortality table and the applicable interest rate."  ERISA § 205(g)(3)(A), 29 U.S.C. § 1055(g)(3)(A).

34.    ERISA § 205(g) defines the "applicable mortality table" as the "mortality table, modified as appropriate by the Secretary of the Treasury, based on the mortality table specified for the plan year" under ERISA 303, 29 U.S.C. § 1083, and defines the "applicable interest rate" as the segment interest rates published by Secretary of Treasury (the "Segment Rates") (collectively, the "Treasury Assumptions").

35.    ERISA § 205(g)'s interpreting regulation, 26 C.F.R. § 1.417(e)-1, states that plans "must provide the present value of any accrued benefit and the amount…of any distribution, including a single sum" in an amount that is not less than if calculated using the Treasury Assumptions.  26 C.F.R. § 1.417(e)-1(d)(1).[3]

36.    The Secretary of Treasury publishes the Segment Rates every month.  26 C.F.R. § 1.417(e)-1(d)(4) allows plans to choose which month's Segment Rates they will use to calculate benefits (e.g., August, September, etc.).  Plans may choose from among several "stability periods" and "lookback months" to which month's Segment Rates to apply and may also use an average of the Segment Rates from.  *Id*.  But, whatever "time and method" plans choose to determine the interest rate must be determined in a consistent manner that is applied uniformly to ***all*** participants in the plan.

---

[3]    ERISA § 205(g) and Tax Code § 417(e) changed the definitions of "applicable mortality table" and "applicable interest rate" for plan years beginning January 1, 2008. Accordingly, the Commissioner of the IRS amended the definitions of those terms in 26 C.F.R. §§ 1.417(e)-1(d)(2) and (d)(3) through Revenue Rulings, annual IRS Notices and monthly publications of the "Minimum Present Value Segment Rates." *See*, *e.g.*, Rev. Rul. 2007-67, 2007 WL 3258506, IRS Notice 2007-81, IRS Notice 2018-02, 2017 WL 6389841; *see also* https://www.irs.gov/retirement-plans/minimum-present-value-segment-rates

37.     Under Title I, Defendants use the amount of the accrued benefit payable to participants in their chosen form without the ILO to calculate ILO benefits.  Plan, Title I at § IV.E, § VI.D(6)(b) and § VI.E(4)(b).  Accordingly, the Treasury Assumptions must be applied to the non-ILO form to calculate the ILO benefit amounts under 26 C.F.R. § 1.417(e)-1.  *Costantino v. TRW, Inc.*, 13 F.3d 969, 979 (6th Cir. 1994); *see also Pikas v. Williams Cos., Inc.*, No. 08-cv-101, 2013 WL 622234, * 4 (N.D. Okla. Feb. 20, 2013).

### IV.     The ILO Is Not Covered by the Exceptions in 26 C.F.R. § 1.417(e)-1(d)(6)(i).

38.     26 C.F.R. § 1.417(e)-1(d)(6), provides "Exceptions" to the "General rule" that the Treasury Assumptions must be used.  Paragraph (d)(6) states that paragraph (d):

> does ***not*** apply to the amount of a distribution paid in the form of an annual benefit that—
>
> (i) Does not decrease during the life of the participant, or, in the case of a QPSA, the life of the participant's spouse; or
>
> (ii) Decreases during the life of the participant merely because of—
>
>> (A) The death of the survivor annuitant (but only if the reduction is to a level not below 50% of the annual benefit payable before the death of the survivor annuitant); or
>>
>> (B) The cessation or reduction of Social Security supplements or qualified disability benefits (as defined in section 411(a)(9)).

26 C.F.R. § 1.417(e)-1(d)(6).

### A.     Benefits under the ILO decrease during participants' lives.

39.     26 C.F.R. § 1.417(e)-1(d)(6)(i) exempts distributions in the form of "an annual benefit that does ***not*** decrease during the life of the participant." (emphasis added).

This exemption covers "non-decreasing annuities," including SLAs and joint and survivor annuities, each of which provide the same benefit amount throughout the participant's life.

40.    An ILO is ***not*** a "non-decreasing annuity." Under an ILO, benefits decrease when participants reach age 62, when they are eligible to receive their Social Security benefits.  Mary Hamrick's Plan benefits will decrease from $2,152 to $671 a month when she turns age 62. David Beckley's Plan benefits will decrease from $2,533 to $1,118 when he turns age 62.  Valentin Rodriguez's Plan benefits will decrease from $4,674 to $3,033 a month when he turns age 62. *See also* Figure 2, above (SPD showing decreased benefits from $2,715/month to $1,493/month when participant turned age 62 with an ILO).

41.    The ILO does not come within paragraph (d)(6)(i)'s exception because benefits decrease when Social Security benefits commence. Therefore, benefits "decrease during the life of the participant."

**B.    The ILO is not covered by the exceptions in 26 C.F.R. § 1.417(e)-1(d)(6)(ii).**

**1.    Paragraph (A)'s "Death of the Survivor Annuitant" Exception Does not Apply.**

42.    Paragraph (d)(6)(ii)(A) provides that plans do not have to use the Treasury Assumptions to calculate a distribution that "[d]ecreases during the life of the participant merely because of…the death of the survivor annuitant."   26 C.F.R. § 1.417(e)-1(d)(6)(ii)(A).  This exception does not apply because benefits under the ILO do not decrease upon the beneficiary's death.

43.    None of the forms that participants can select with the ILO decrease upon the beneficiary's death.  If the participant dies first, the beneficiary's death will not impact the

amount payable during the participant's lifetime. Indeed, a participant that selects an SLA with an ILO may not even have a beneficiary. Instead, benefits decrease when the participant reaches age 62.

> **2.    Paragraph (B)'s exception does not apply because ILO benefits do not decrease because "Social Security supplements" or "qualified disability benefits" end.**

44.    Paragraph (d)(6)(ii)(B) provides that plans do not have to use the Treasury Assumptions to calculate a distribution that "[d]ecreases during the life of the participant merely because of…[t]he cessation or reduction of Social Security supplements or qualified disability benefits."  26 C.F.R. § 1.417(e)-1(d)(6)(ii)(B).

> **a.    The ILO does not provide a "Social Security supplement."**

45.    ILO benefits do not decrease because a Social Security supplement ends or is reduced because the higher pre-age 62 benefit payment under an ILO is not a Social Security supplement.  Instead, an ILO is an "optional form of accrued benefit payment" under the Plan. Plan, Title I at § IV.E.  See, *Friedland v. UBS AG*, No. 16-cv-787, 2019 WL 1232084, * 2 (E.D.N.Y. Mar. 14, 2019); *see also* 26 C.F.R. §§ 1.411(d)-3(g)(16) and (g)(6)(ii).

46.    Under an ILO, a participant's "pension [is] increased prior to age 62 and reduced thereafter."  Plan, Title I at § IV.E.  In other words, instead of receiving "flat monthly payments for life," the Plan provides that accrued benefits are "increased prior to age 62" and then "reduced to below what would otherwise be his monthly benefit, to compensate for the earlier increase." *Carmody v. IBEW Local 82 Pension Plan*, No. 3:11-cv-243, 2012 WL 174802, * 1 (S.D. Ohio Jan. 20, 2012). Since the higher pre-age 62

benefit payment is a form of participants' accrued benefit under the Plan, a distribution is not decreased "merely because of…[t]he cessation or reduction of Social Security supplements," it is decreased because of a reduction in accrued benefits under the Plan benefit structure by operation of the express terms of the Plan.

47.    In sharp contrast to an ILO, a Social Security supplement is not a form of accrued benefit. Instead, it is a separate payment *in addition to* participants' accrued benefits. *Meehan v. Atlantic Mut. Ins. Co.*, No. 06-cv-3265, 2008 WL 268805 (E.D.N.Y. Jan. 30, 2008); *Hoover v. Cumberland, Md. Area Teamsters Pension Fund*, 756 F.2d 977, 985 (3rd Cir. 1985) (Social Security supplements are "incidental" to a participant's accrued benefit and "an extra supplement.")  Social Security supplements are payments on top of the participant's accrued benefit.  *Bellas v. CBS, Inc.*, 221 F.3d 517, 520 (3d Cir. 2000).

**b.    The ILO does not provide "qualified disability benefits."**

48.    This exception does not apply because the ILO is not a "qualified disability benefit."   The Plan does not require participants to be disabled to receive the ILO and disabled participants do not receive a higher benefit amount. Plan, Title I at § IV.C. Accordingly, this exception does not apply.

**V.    Participants Are Harmed Because Defendants Do Not Use the Treasury Assumptions to Calculate the ILO.**

49.    A present value calculation requires the use actuarial assumptions concerning interest and mortality rates.  The interest rate assumption accounts for the time value of money — the idea that a dollar in hand today is worth more than a dollar paid in a year, or in ten years — and discounts the value of expected future payments to the present.

15

50.    There is an inverse relationship between the interest rate used and the conversion factor used to determine the amount of an ILO benefit.  Using a higher interest rate — holding mortality rates equal — decreases the conversion factor, lowering the amount of benefits under the ILO.

51.    Since at least 2010, the interest rate determined using Appendix A has been less than 5%, triggering the 5% minimum.  A 5% rate is higher than the single rate equivalent of the Segment Interest Rates in each month over the last 10 years.  Five percent is also higher than the single rate produced by the averaging methodology that Defendants use under 26 C.F.R. § 1.417(e)-1(d)(4).  Plan, Title I at Appendix F, § IV(j).[4]

52.    Mortality tables predict how long the participant and, if applicable, the beneficiary will live to account for the likelihood of each future benefit payment being made.  Over the last several decades, mortality rates have generally improved with advances in medicine and better collective lifestyle habits.  People who retired recently are expected to live longer than those who retired in previous generations.  Older mortality tables predict that people near (and after) retirement age will die at a faster rate than current mortality tables.

53.    There is an inverse relationship between mortality rates and the conversion factor used to determine the amount of an ILO benefit.  Using higher mortality rates, such

---

[4]    The Plan uses the average of the Segment Rates from "the fourth and fifth month preceding the first day of the calendar quarter" of the participant's benefit commencement date.

as those in an older mortality table – holding interest rates equal – decreases the conversion factor, lowering the amount of the benefits under the ILO.

54.    The Plan does not say how the conversion factors in Appendix B were generated.  But Title I defines "actuarially reduced" as the value calculated using the interest rate determined under Appendix A and the mortality rates in the "the 1985 DuPont Pension Mortality Table."  Plan, Title I, § IX.B(3)(5).  Upon information and belief, Defendants used the "1985 Pension Mortality Table" to generate the conversion factors in Appendix B.

55.    The conversion factors in Appendix B are similar to those generated by the male version of the 1983 Group Annuity Mortality table, which was developed from the mortality rates of people that had already retired in 1966, and the UP-84 mortality table, which was published in 1976 and was based on mortality data from the 1960s. For all relevant times, the conversion factors in Appendix B have been lower than those generated by the Treasury Mortality Table.

56.    The conversion factors in Appendix B that Defendants used to calculate ILO benefits were also materially lower than those generated using the Treasury Assumptions.

57.    "ERISA did not leave plans free to choose their own methodology for determining the actuarial equivalent of the accrued benefit . . . 'If plans were free to determine their own assumptions and methodology, they could effectively eviscerate the protections provided by ERISA's requirement of actuarial equivalence.'" *Laurent v. PriceWaterhouseCoopers LLP*, 794 F.3d 272 (2d Cir. 2015) *quoting*, *Esden v. Bank of Boston*, 229 F.3d 154, 164 (2d Cir. 2000).

58.     During the relevant period, the conversion factors Defendants used to calculate ILO benefits were lower than those generated by the Treasury Assumptions, and instead were equal to those that would be generated by outdated, unreasonable actuarial assumptions. If Defendants had used the Treasury Assumptions like ERISA requires to calculate ILO benefits, Plaintiffs and the Class would have received, and would continue to receive, benefits that are greater than the benefits they currently receive and higher benefits after they turn age 62.

59.     Plaintiff Mary Hamrick is receiving benefits as an SLA with an ILO.  When Ms. Hamrick retired at age 53, she was an entitled to an SLA of $1,426 a month, the benefit that Defendants used to calculate her ILO benefits.  With the ILO option, Ms. Hamrick will receive an SLA of $2,157 a month until she turns age 62 and then $677 a month for the rest of her life.  If Defendants had used the Treasury Assumptions to calculate Ms. Hamrick's ILO, her pre-age 62 benefit would be $113.38, or 5.26% higher, and her post-age 62 benefit would be $113.38, or 16.77% higher.  Through their failure to use the Treasury Assumptions to calculate ILO benefits, Defendants reduced the present value of Ms. Hamrick's pension benefits by more than $23,059.89.

60.     Plaintiff David Beckley is receiving benefits as a 50% SBO with an ILO. When Mr. Beckley retired at age 53, he was an entitled to a 50% SBO of $1,472 a month, the benefit that Defendants used to calculate his ILO benefits.  With the ILO option, Mr. Beckley will receive $2,533 a month until he turns age 62 and then $1,118 a month for the rest of his life.  If Defendants had used the Treasury Assumptions to calculate Mr. Beckley's ILO, his pre-age 62 benefit would be $66.00, or 2.61% higher, and his post-age

18

62 benefit would be $66.00, or 5.9% higher.  Through their failure to use the Treasury

Assumptions to calculate ILO benefits, Defendants reduced the present value of Mr.

Beckley's pension benefits by more than $11,990.89.

61.    Plaintiff Valentin Rodriguez is receiving benefits as an SLA with an ILO.

When Mr. Rodriguez retired at age 55, he was an entitled to an SLA of $3,757 a month,

the benefit that Defendants used to calculate his ILO benefits.  With the ILO option, Mr.

Hamrick will receive an SLA of $4,674 a month until he turns age 62 and then $3,033 a

month for the rest of his life.  If Defendants had used the Treasury Assumptions to calculate

Mr. Rodriguez's ILO, his pre-age 62 benefit would be $121.00, or 2.59% higher, and his

post-age 62 benefit would be $121.00, or 3.99% higher.  Through their failure to use the

Treasury Assumptions to calculate ILO benefits, Defendants reduced the present value of

Mr. Rodriguez's pension benefits by more than $24,371.56.

## CLASS ACTION ALLEGATIONS

62.    Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of

Civil Procedure on behalf of themselves and the class (the "Class") defined as follows:

> All participants and beneficiaries of the Plan receiving Title I's
> Income-Leveling Option where the present value of their
> benefits was less than the present value of their benefits if
> calculated using the applicable Treasury Assumptions.
> Excluded from the Class are Defendants and any individuals
> who are subsequently to be determined to be fiduciaries of the
> Plan.

63.    The members of the Class are so numerous that joinder of all members is

impractical. Upon information and belief, the Class includes thousands of persons.

According to the Plan's most recent Form 5500, there are 55,387 retired participants

receiving benefits and a significant percentage of Title I participants began receiving benefits before age 62.

64.    Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs' claims and the claims of all Class members arise out of the same policies and practices as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct.

65.    There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

> A.    Whether the ERISA requires plans to use the Treasury Assumptions to calculate ILO benefits;

> B.    Whether Title I's formulae for calculating ILO benefits provide benefits that are equal to those calculated using the Treasury Assumptions;

> C.    Whether Plaintiffs and Class members should have their benefits recalculated to conform with ERISA § 205(g)'s actuarial equivalence requirements; and

> D.    Whether Plaintiffs and Class members should receive payments to compensate them for past and future benefit payments that did not and will not satisfy ERISA § 205(g)'s actuarial equivalence requirements.

66.    Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class actions. Plaintiffs

have no interests antagonistic to those of the other Class members. They are each committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

67.     This action may be properly certified under either subparagraph of Federal Rule of Civil Procedure 23(b)(1). Class action status is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status also is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

68.     In the alternative, certification under Rule 23(b)(2) is warranted because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

69.     If the Class is not certified under Rule 23(b)(1) or (b)(2), then certification under Rule 23(b)(3) is appropriate because the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## FIRST CLAIM FOR RELIEF
### Declaratory and Equitable Relief
### (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))

70.     Plaintiffs re-allege and incorporate by reference all prior allegations in this Complaint.

71.     Defendants improperly reduced ILO benefits for participants and beneficiaries in Title I below the amounts that they would receive if those benefits had been calculated using the Treasury Assumptions in violation of ERISA § 205(g), 29 U.S.C. § 1055(g).

72.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

73.     Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief, determining that the methodologies used by Defendants for calculating ILOs violate ERISA because they do not provide benefit amounts that are at least equal to the amounts when calculated by the Treasury Assumptions, as required by ERISA § 205(g), 29 U.S.C. § 1055(g).

74.     Plaintiffs seek an order from the Court providing a full range of equitable relief, including but not limited to:

(a)     an injunction to re-calculate, correct, and pay ILO benefits previously paid under the Plan;

(b)    an injunction to re-calculate, correct, and pay ILO benefits to be paid under the Plan;

(c)    an "accounting" of all prior benefits and payments;

(d)    an equitable surcharge;

(e)    disgorgement of amounts wrongfully withheld;

(f)    restitution of amounts wrongfully withheld;

(g)    disgorgement of profits earned on amounts wrongfully withheld;

(h)    a constructive trust;

(i)    an equitable lien;

(j)    an injunction against further violations; and

(k)    other relief the Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(ERISA §§ 404 and 502(a)(3), 29 U.S.C. §§ 1104 and 1132(a)(3))**

75.    Plaintiffs re-allege and incorporate by reference all prior allegations in this Complaint.

76.    The Committee is a named fiduciary of the Plan.

77.    ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent that person "(i) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) renders investment advice for a fee or other compensation, direct or indirect, with respect

to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). This is a functional test. As such, neither "named fiduciary" status, nor formal delegation is required for a finding of fiduciary status, and contractual agreements, such as the governing Plan documents, cannot override a finding of fiduciary status when the statutory test is met.

78.     The Committee and its members are fiduciaries for the Plan because throughout the Class Period they have been named fiduciaries of the Plan, and/or exercised discretionary authority or control respecting the management of the Plan, and/or exercised authority or control over the management or disposition of the Plan's assets, and/or have had discretionary authority or discretionary responsibility in the administration of the Plan. Among other things, during the Class Period, the Committee had authority or control over the determination of the amount and payment of benefits from the Plan.

79.     DuPont is a fiduciary of the Plan, within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or control with respect to the management of the Plan, and/or exercised authority or control over management or disposition of the Plan's assets, and/or has discretionary authority or discretionary responsibility in the administration of the Plan, including, but not limited to, its duty to appoint and monitor members of the Committee.

80.     ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) requires Defendant-fiduciaries to discharge their duties with respect to the Plan — solely in the interest of the participants and beneficiaries and — "with the care, skill, prudence, and diligence under

the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims" and "in accordance with the documents and instruments governing the plan[s] insofar as such documents and plan instruments are consistent with" ERISA.

81.    The Plan's terms are not consistent with ERISA because Title I of the Plan uses formulae to calculate ILO benefits that do not produce a result equal to or greater than a formula using the Treasury Assumptions.  As a result, participants and beneficiaries do not receive actuarially equivalent benefits, like ERISA requires, and lose vested benefits in violation of ERISA.

82.    Defendants breached their fiduciary duties by following the Plan terms which violate ERISA because those terms result in participants receiving less than the actuarial equivalent of their vested accrued benefits.

83.    ERISA further imposes on fiduciaries that appoint other fiduciaries the duty to monitor the actions of those appointed fiduciaries to ensure compliance with ERISA.  In allowing the Committee to pay benefits that were not actuarially equivalent, in violation of ERISA, DuPont breached its fiduciary duty to supervise and monitor the Committee.

84.    As a direct and proximate result of the Defendants' fiduciary breaches, participants in the Plan have lost, and are continuing to lose, millions of dollars in vested accrued pension benefits.

85.    DuPont and the Committee are jointly liable for the acts of the other as co-fiduciaries for the Plan.

86.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

87.    Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief, determining that the methodologies used by Defendants for calculating ILOs violate ERISA because they do not provide benefit amounts that are at least equal to the amounts when calculated by the Treasury Assumptions, as required by ERISA § 205(g), 29 U.S.C. § 1055(g).

88.    Plaintiffs further seek orders from the Court providing a full range of equitable relief including but not limited to:

(a)    an injunction to re-calculate, correct, and pay ILO benefits previously paid under the Plan;

(b)    an injunction to re-calculate, correct, and pay ILO benefits to be paid under the Plan;

(c)    an "accounting" of all prior benefits and payments;

(d)    an equitable surcharge;

(e)    disgorgement of amounts wrongfully withheld;

(f)    restitution of amounts wrongfully withheld;

(g)    disgorgement of profits earned on amounts wrongfully withheld;

(h)    a constructive trust;

(i)     an equitable lien;

(j)     an injunction against further violations; and

(k)     other relief the Court deems just and proper.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A.     Certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure,  and designate Plaintiffs as representatives of the class;

B.     Declare that the Plan has failed, and continues to fail, to properly calculate and pay ILO benefits in violation of ERISA;

C.     Order Defendants to correct, recalculate, and pay ILO benefits that have been paid under the Title I of the Plan;

D.     Order Defendants to correct, re-calculate, and pay ILO benefits to be paid under the Title I of the Plan;

E.     Order Defendants to provide an "accounting" of all prior payments of ILO benefits under the Plan to determine the proper amounts that should have been paid;

F.     Order Defendants to pay all benefits improperly withheld, including under the theories of equitable surcharge, restitution, and disgorgement;

G.     Order Defendants to disgorge any profits earned on amounts improperly withheld;

H.     Impose a constructive trust;

I.     Impose an equitable lien;

27

J.     Order Defendants to pay future benefits in accordance with ERISA's actuarial equivalence requirements;

K.     Award, declare, or otherwise provide Plaintiff and the Class with all relief available under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper;

L.     Award to Plaintiffs' counsel attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M.     Any other relief or remedy the Court determines is just and proper.

Dated: March 3, 2023                     Respectfully submitted,

                                          /s/ *Carmella P. Keener*
                                         Carmella P. Keener, Esquire
                                         **COOCH AND TAYLOR, P.A.**
                                         ckeener@coochtaylor.com
                                         The Nemours Building
                                         1007 N. Orange Street, Suite 1120
                                         Wilmington, DE 19801
                                         (302) 984-3816
                                         ckeener@coochtaylor.com

                                         **IZARD, KINDALL & RAABE LLP**
                                         (*pro hac vice* applications forthcoming)
                                         Robert A. Izard
                                         Douglas P. Needham
                                         Christopher M. Barrett
                                         29 South Main Street, Suite 305
                                         West Hartford, CT 06107
                                         Telephone: (860) 493-6292
                                         rizard@ikrlaw.com
                                         dneedham@ikrlaw.com
                                         cbarrett@ikrlaw.com

                                         ***Counsel for Plaintiffs***