IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARY J. HAMRICK, DAVID B. BECKLEY, and VALENTIN RODRIGUEZ, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>E.I. DU PONT DE NEMOURS AND COMPANY, the ADMINISTRATION COMMITTEE OF THE DUPONT PENSION AND RETIREMENT PLAN, and JOHN/JANE DOES 1-5,<br><br>                    Defendants. | C.A. No. 23-238-JLH<br><br><br>FILED<br><br>JAN 3 1 2024<br><br>U.S. DISTRICT COURT DISTRICT OF DELAWARE |
| JAMES M. MANNING, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>EIDP, INC. f/k/a E.I. du Pont de Nemours and Company, THE ADMINISTRATION COMMITTEE OF THE DUPONT PENSION AND RETIREMENT PLAN and JOHN/JANE DOES 1-5,<br><br>                    Defendants. | C.A. No. 23-271-JLH |

## REPORT AND RECOMMENDATION

In these actions arising under the Employee Retirement Income Security Act of 1974, 29

U.S.C. § 1001, et seq. ("ERISA"), Defendants EIDP, Inc. f/k/a E.I. du Pont de Nemours and

Company ("EIDP"), the Administrative Committee of the DuPont Pension and Retirement Plan

(the "Committee") and the Committee's members (collectively, "Defendants") moved to dismiss two class action complaints filed by Plaintiff James M. Manning (C.A. No. 23-271-JLH, the "Manning Action") and Plaintiffs Mary J. Hamrick, David B. Beckley, and Valentin Rodriguez (collectively, the "Hamrick Plaintiffs") (C.A. 23-238-JLH, the "Hamrick Action"). Defendants moved to dismiss Mr. Manning's complaint as untimely and for failure to state a claim upon which relief can be granted. (Manning Action, D.I. 9, "the Manning Motion"). Defendants moved to dismiss the Hamrick Plaintiffs' complaint as untimely. (Hamrick Action, D.I. 10, "the Hamrick Motion"). Both Motions have been fully briefed (Manning Action, D.I. 10, D.I. 12, D.I. 14; Hamrick Action, D.I. 11, D.I. 13, D.I. 15). Because these actions involve overlapping factual and legal issues and parties in both actions are represented by the same counsel, I held argument on the Motions together on December 5, 2023. For the following reasons, I recommend that the Manning Motion be GRANTED-IN-PART and DENIED-IN-PART and that the Hamrick Motion be DENIED.

## I.   BACKGROUND

### A.   The Plan

EIDP sponsors a Pension and Retirement Plan (the "Plan") administered by the Committee. (Manning Action, D.I. 1 ¶¶ 1, 16–17; Hamrick Action, D.I. 1 ¶¶ 1, 15–16). Plan participants may elect to receive a single life annuity ("SLA"), which provides participants with monthly payments from retirement until their death. (Manning Action, D.I. 1 ¶ 2). Participants may also select from various joint and survivor annuities, which the Plan calls Spouse Benefit Options ("SBOs."). (*Id.* ¶¶ 1, 3). The Plan offers a 50% and 75% SBO annuity option. (*Id.* ¶ 3). The Plan's default option for married participants is the 50% SBO annuity. (*Id.* ¶ 47). The Plan also permits certain participants to elect additional survivor benefits under a Joint and Survivor Option ("JSO"). (*Id.*

¶ 43). The Plan calculates the present values of both SLAs and JSOs using actuarial assumptions, which consist of mortality tables and interest rate assumptions. (*Id.* ¶¶ 4–7).

The Plan also offers annuities which disburse benefits under various payment schedules. (Hamrick Action, D.I. 1 ¶¶ 3, 24–26). Certain participants may select an Income-Leveling Option ("ILO") to receive increased monthly benefit payments from the Plan until age 62, the age at which the Plan estimates Social Security payments will begin. (*Id.* ¶¶ 24–26). After age 62, the monthly benefit payments paid by the Plan are reduced. (*Id.*) To calculate the ILO, the Plan uses actuarial factors to account for the difference in benefits paid during the period before the participant receives Social Security benefits and the period after those federal benefits begin. (*Id.* ¶¶ 22, 26–30).

### B. Mr. Manning's Action

Mr. Manning is a participant in the Plan. (Manning Action, D.I. 1 ¶ 14). He elected to receive a 75% SBO annuity with a 10% JSO. (*Id.* ¶ 78). He began receiving benefits at age 66 and still receives Plan benefits today. (*Id.* ¶¶ 14, 78).

On March 13, 2023, Mr. Manning initiated the instant class action against Defendants, arguing that they have failed to pay benefits to participants that selected an SBO in amounts that satisfy the actuarial equivalence requirements required under ERISA. (*See generally id.*). Mr. Manning's first claim seeks "declaratory and equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). (*Id.* at 29). Mr. Manning's second claim asserts a breach of fiduciary duty under ERISA §§ 404 and 502(a)(3), 29 U.S.C. §§ 1104 and 1132(a)(3). (*Id.* at 30). Defendants moved to dismiss Mr. Manning's Complaint, arguing that Mr. Manning's claims are either time-barred or otherwise fail to state a claim. (Manning Action, D.I. 9, D.I. 10).

3

### C. The Hamrick Plaintiffs' Action

The Hamrick Plaintiffs are participants in the Plan and each elected benefits with an ILO. (Hamrick Action, D.I. 1 ¶¶ 59–61). The Hamrick Plaintiffs began receiving benefits at various ages and each receives Plan benefits today. (*Id.* ¶¶ 11–13, 59–61).

On March 3, 2023, the Hamrick Plaintiffs initiated the instant class action against Defendants, arguing that they have failed to pay benefits to participants that selected an ILO in amounts that satisfy the actuarial equivalence requirements required under ERISA. (*See generally id.*). The Hamrick Plaintiffs' first claim seeks "declaratory and equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). (*Id.* at 22). The Hamrick Plaintiffs' second claim asserts a breach of fiduciary duty under ERISA §§ 404 and 502(a)(3), 29 U.S.C. §§ 1104 and 1132(a)(3)). (*Id.* at 23). Defendants moved to dismiss the Hamrick Plaintiffs' complaint, arguing that their claims are time-barred. (Hamrick Action, D.I. 10, D.I. 11).

## II. LEGAL STANDARD

In reviewing a motion filed under Rule 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations omitted). A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The complaint need not contain detailed factual allegations, but conclusory allegations and "formulaic recitation[s] of the elements of a cause of action" are insufficient to give the defendant fair notice of the nature of and grounds for the claim. *Twombly*, 550 U.S. at 555. The complaint must contain facts sufficient to show that a claim has "substantive

plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam).  While this plausibility standard requires more of the complaint than allegations supporting the mere possibility that the defendant is liable as alleged, plausibility should not be taken to mean probability. *Twombly*, 550 U.S. at 545. A claim is facially plausible, and the standard is satisfied, when the claim's factual allegations, accepted as true, allow the court to reasonably infer that the defendant is liable as alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 1948 (2009).

## III.   DISCUSSION

Defendants moved to dismiss Mr. Manning and the Hamrick Plaintiffs' actions on multiple grounds.  I conclude that Mr. Manning has failed to state a breach of fiduciary claim and I recommend dismissal on that ground.  I do not recommend dismissal of Mr. Manning's non-fiduciary claim, the Hamrick Plaintiffs' non-fiduciary claims, and the Hamrick Plaintiffs' breach of fiduciary duty claims.  I do not reach the timeliness of Mr. Manning's breach of fiduciary claim because I recommend dismissing it on other grounds.

### A. Mr. Manning's Non-Fiduciary Claim

*1.  Mr. Manning has stated a claim that his benefit is subject to ERISA's actuarial equivalence requirements.*

Defendants argue that Mr. Manning's form of benefit is not subject to the actuarial equivalence requirements set forth in 29 U.S.C. § 1055 because his benefit is not "the QJSA." (Manning Action, D.I. 10 at 8–9). I disagree.

ERISA requires plans to provide to married participants pension benefits "in the form of" a QJSA. 29 U.S.C. § 1055(a)(1). The QJSA is an annuity providing a surviving spouse with a monthly benefit between 50% and 100% of the benefit during the participant's life that "is the actuarial equivalent of a [SLA] for the life of the participant." 29 U.S.C. § 1055(d)(1). The QJSA "also includes any annuity in a form having the effect of an annuity described" in 29 U.S.C. §

1055(d)(1). *Id.* If a plan offers two or more annuities that could qualify as a QJSA, "the plan must designate which one is the QJSA and, therefore, the automatic form of benefit payment." 26 C.F.R. § 1.401(a)-20, Q&A-16. "A plan, however, may allow a participant to elect out of such a QJSA, without spousal consent, in favor of another actuarially equivalent joint and survivor annuity that satisfies the QJSA conditions." *Id.*

Here, the Plan identifies the 50% SBO as the QJSA. (Manning Action, D.I. 10 at 9, D.I. 12 at 14). Mr. Manning receives an SBO/JSO benefit consisting of a 75% SBO and a 10% JSO. (Manning Action, D.I. 1 ¶ 78). Although Defendants argue that Mr. Manning did not select "the QJSA," rendering this form of benefit unactionable under ERISA, Mr. Manning explains (and Defendants do not dispute) that Defendants advise Plan participants that, "Any other optional form of payment listed under 'Your Payment Options for Pension Benefit with Spouse Benefit Option' also meets the requirements of a Qualified Joint and Survivor Annuity." (Manning Action, D.I. 13-4, Ex. 4; D.I. 1 ¶ 48). Neither do Defendants dispute Mr. Manning's assertion that his form of benefit is a "Pension Benefit with Spouse Benefit Option" and accordingly, "meets the requirements of a QJSA under the Plan that did not require Plaintiff's spouse's consent." (*Compare* Manning Action, D.I. 12 at 15, *with* Manning Action, D.I. 14). Thus, I would be hard-pressed to conclude that ERISA's actuarial equivalence requirements do not extend to a form of benefit that Defendants themselves represent is a QJSA.

Defendants maintain their representations to Mr. Manning are irrelevant because, as a matter of statutory interpretation, Mr. Manning "is not receiving a QJSA as that term is used in 29 U.S.C. § 1055." (Manning Action, D.I. 14 at 7–8). But 29 U.S.C. § 1055 does not support such a restrictive reading, particularly when that provision states that the QJSA "also includes *any annuity* in a form having the effect of an annuity described" in 29 U.S.C. § 1055(d)(1) (emphasis added).

6

Although Defendants claim the implementing regulations require a plan to "designate which one is the QJSA" for ERISA purposes, Defendants omit the text that follows, which suggests that actuarial equivalence requirements do extend to annuities that satisfy QJSA conditions. *See* 26 C.F.R. § 1.401(a)-20, Q&A-16 ("A plan, however, may allow a participant to elect out of such a QJSA, without spousal consent, in favor of another actuarially equivalent joint and survivor annuity that satisfies the QJSA conditions.").[1] Defendants point to no other statutory text, federal regulation, or any judicial authority confining ERISA relief to only "the QJSA" as Defendants define it. Thus, I conclude Mr. Manning has stated a claim that his form of benefit is subject to ERISA's actuarial equivalence requirements.

    2. *Mr. Manning has conceded his anti-forfeiture claim.*

Defendants argue that Mr. Manning failed to allege that the Plan violated ERISA's anti-forfeiture provision codified at 29 U.S.C. § 1053(a). (Manning Action, D.I. 10 at 10, D.I. 14 at 9). Mr. Manning does not address this basis for dismissal in his Answering Brief. (Manning Action, D.I. 12). Accordingly, I conclude that Mr. Manning has waived this aspect of his non-fiduciary claim and recommend that it be dismissed. *See Fields v. Dep't of Servs. for Child., Youth, & Their Fams. City of Dover*, C.A. No. 19-2241-LPS-SRF, 2021 WL 1153024, at *1 (D. Del. Mar. 26, 2021) (explaining that failure to "raise any arguments or case authority . . . in response to Defendants' opening brief resulted in a waiver of such opposition" on a motion to dismiss).

---

[1]     Although these regulations are in a question-and-answer format, they have been applied as typical regulations. *See Boggs v. Boggs*, 520 U.S. 833, 851-52 (1997).

7

### 3. Mr. Manning has stated a claim that the Plan's actuarial assumptions are unreasonable.

Defendants argue that Mr. Manning has not plausibly alleged that the actuarial assumptions used to calculate his benefits violate 29 U.S.C. § 1055(d). (Manning Action, D.I. 10 at 11–13). I disagree.

ERISA requires that pension plans provide a QJSA and QOSA which are "actuarially equivalent" to a single life annuity. 29 U.S.C. § 1055(d)(1). Although the statute does not expressly impose a reasonableness requirement, the majority of courts that have considered the issue have concluded that § 1055(d) requires the use of reasonable assumptions when measuring actuarial equivalence. *See Urlaub v. CITGO Petroleum Corp.*, C.A. No. 21-4133, 2022 WL 523129, at *6 (N.D. Ill. Feb. 22, 2022) ("But it cannot possibly be the case that ERISA's actuarial equivalence requirements allow the use of unreasonable mortality assumptions. Taken to the extreme, the defendants' argument suggests that they could have used any mortality table—presumably, even one from the sixteenth century—to calculate the plaintiffs' JSAs. If this were true, the actuarial equivalence requirement would be rendered meaningless."); *Smith v. Rockwell Automation, Inc.*, 438 F. Supp. 3d 912, 924 (E.D. Wis. 2020) ("[T]he complaint alleges that the 1971 GAM table is more than 40 years old and does not reflect the significant improvements in life expectancy that have occurred since they were published. These allegations, by themselves, give rise to a reasonable inference that the plan's actuarial assumptions are unreasonable and thus do not produce actuarial equivalence. Therefore, the plaintiff's claim is plausible.") (citations omitted); *Herndon v. Huntington Ingalls Indus., Inc.*, C.A. No. 19-52, 2020 WL 3053465, at *2 (E.D. Va. Feb. 20, 2020) ("Under a straightforward and plain reading of the statute and regulations, Defendants must use 'reasonable' data to ensure that Plaintiff is receiving benefits that are equivalent to a single life annuity.").

Defendants rely upon *Belknap v. Partners Healthcare Sys., Inc.* to argue that "the statute does not impose a reasonableness requirement with respect to the actuarial assumptions at issue in this case." (Manning Action, D.I. 10 at 11) (citing *Belknap v. Partners Healthcare Sys., Inc.*, 588 F. Supp. 3d 161, 175 (D. Mass. 2022), *appeal dismissed sub nom., Belknap v. Mass Gen. Brigham, Inc.*, No. 22-1188, 2022 WL 4333752 (1st Cir. Aug. 30, 2022)). But that action involved § 1054(c)(3), a provision not at issue here. *See Belknap*, 588 F. Supp. 3d at 175 ("[T]he Court cannot conclude that the calculation of actuarial equivalence under § 1054(c)(3) of ERISA requires the use of 'reasonable' assumptions, particularly when the plan itself specifically requires the use of particular actuarial assumptions."). Even if the court's reasoning on § 1054(c)(3) were applicable here, the *Belknap* court denied defendant's earlier-filed motion to dismiss, noting that "Congress intended the 'actuarial equivalence' requirement of §1054(c)(3) to provide some degree of protection to beneficiaries, and not to permit employers to use any assumptions they chose, no matter how outmoded or inapt." *Belknap v. Partners Healthcare Sys., Inc.*, C.A. No. 19-11437, 2020 WL 4506162, at *2 (D. Mass. Aug. 5, 2020). *Belknap* does not compel a decision in Defendants' favor.

Defendants next argue that, even if the statute required reasonable actuarial assumptions, Mr. Manning has failed to plausibly allege the Plan's assumptions fall outside the range of reasonableness. (Manning Action, D.I. 10 at 11). But Mr. Manning pleads that Defendants are using outdated mortality tables that underpay pension benefits. (Manning Action, D.I. 1 ¶¶ 55–64). Mr. Manning identifies three cases—*Herndon, Smith,* and *Urlaub*—each holding that a plaintiff stated a claim under 29 U.S.C. § 1055(d) by alleging their benefits were calculated using unreasonable mortality tables. *Herndon*, 2020 WL 3053465, at *2–3; *Smith*, 438 F. Supp. 3d at 924; *Urlaub*, 2022 WL 523129, at *1. Defendants do not address this authority. It may be the

9

case that, ultimately, Defendants can show that their use of the mortality tables is reasonable. But, at this stage, where I must read the complaint in a way that is most favorable to Mr. Manning, I am persuaded that Mr. Manning has stated a claim that the Plan's actuarial assumptions are unreasonable.

### B.  Mr. Manning's Breach of Fiduciary Duty Claim

Defendants argue that Mr. Manning has not plead a breach of fiduciary duty claim because "fiduciaries do not breach their duties under ERISA merely by administering a pension plan according to its written terms." (Manning Action, D.I. 10 at 14). I agree.

Section 1104(a)(1)(D) of Title 29, United States Code, imposes an affirmative duty on plan fiduciaries to discharge their duties with respect to the Plan "in accordance with the documents and instruments governing the plan[s] insofar as such documents and plan instruments are consistent with" ERISA. Of the courts to have considered the issue, most concluded that § 1104(a)(1)(D) does not contemplate the inverse fiduciary duty to not to follow plan documents that are not consistent with ERISA. *See Sec'y of Lab. v. Macy's, Inc.*, C.A. No. 17-541, 2022 WL 407238, at *5 (S.D. Ohio Feb. 10, 2022) (rejecting a request to read that corollary duty into ERISA's plain language as incorrect "[a]s a matter of logic"); *Paul v. RBC Cap. Markets LLC*, C.A. No. C16-5616, 2018 WL 3630290, at *7 (W.D. Wash. July 31, 2018) (noting such proposition "is based on an overly broad reading of ERISA . . . and comes to this court conspicuously unsupported by caselaw"); *Laurent v. PricewaterhouseCoopers LLP*, C.A. No. 06-2280 (JPO), 2018 WL 502239, at *3 (S.D.N.Y. Jan. 19, 2018) ("The Court disagrees with the notion that ERISA imposes a general fiduciary duty on a plan administrator to comply with each and every provision in the statute."); *Cement & Concrete Workers Council Pension Fund v. Ulico Cas. Co.*, 387 F.Supp.2d 175, 185 (E.D.N.Y. 2005) ("However, the plaintiffs' proposed

construction of this statutory provision—that a plan trustee owes a fiduciary duty to depart from any provision of the plan documents which he knows to violate ERISA and/or to amend that provision—goes significantly beyond the plain command of the statute. It therefore comes as no surprise that the plaintiffs are unable to identify a single case holding that a plan trustee necessarily breaches a fiduciary obligation by complying with any provision of the plan which he knows to violate ERISA."). *But see Pender v. Bank of Am. Corp.*, 756 F. Supp. 2d 694, 704 (W.D.N.C. 2010).

In the absence of controlling Third Circuit authority on the issue, I am persuaded by the weight of the authority favoring Defendants' view. In *Macy's*, the U.S. District Court for the Southern District of Ohio rejected the plaintiff's contention that a defendant "necessarily violated its fiduciary duties by following [an] unlawful plan" by principally relying on the text of § 1104(a)(1)(D):

> To start, the Secretary's interpretation of § 1104(a)(1)(D) rests on a logical fallacy. By its plain language, that statutory provision imposes a fiduciary duty to follow plan documents that are consistent with ERISA. But from that, the Secretary asks the Court to infer a fiduciary duty not to follow plan documents that are not consistent with ERISA. As a matter of logic, the latter simply does not follow from the former. Indeed, the fallacy even has a name— "denying the antecedent" or "the fallacy of the inverse." Thus, from the outset, the Secretary's theory of violation of § 1104(a)(1)(D) appears to suffer from the fatal flaw that the plain text of the statute does not support it.

*Macy's*, 2022 WL 407238, at *5. Mr. Manning does not contest this interpretation.

Instead, Mr. Manning relies on *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014) for the proposition that § 1104(a)(1)(D) "makes clear that the duty of prudence trumps the instructions of a plan document." (Manning Action, D.I. 12 at 19–20). But the duty of prudence, § 1104(a)(1)(B), is not at issue here. Moreover, the provision Mr. Manning invokes—the duty to

11

follow plan documents insofar as they are consistent with ERISA under § 1104(a)(1)(D)—did not form the basis of the plaintiffs' claims in *Dudenhoeffer*.[2] Thus, *Dudenhoeffer* does not compel a different outcome.

Mr. Manning also relies on *Pender v. Bank of America Corp.*, which arguably comes out differently on § 1104(a)(1)(D). I decline to follow *Pender*. In *Pender*, the defendants sought to dismiss plaintiff's breach of fiduciary duty claims based on another alleged ERISA violation involving calculation of lump-sum retirement benefits. *Pender*, 756 F. Supp. 2d at 704. The *Pender* court concluded that the "Plans' fiduciaries might have breached their duties because implementing the transfers deprived participants of an important protection under ERISA—the separate account feature." *Id.* Thus, while *Pender* "could be read to suggest that some, but not all, implementations of plan terms that violate ERISA may constitute a breach of fiduciary duty . . . it is not clear whether the *Pender* court adopted a theory of breach of fiduciary duty based on § 1104(a)(1)(D), [like Mr. Manning's], or instead based on §§ 1104(a)(1)(A) or (B), which are not at issue here." *See Macy's*, 2022 WL 407238, at *7 (citing *Pender*, 756 F. Supp. 2d at 704). "Also unclear is how the *Pender* court determined that the question turns on whether the act at issue 'deprived participants of an important protection under ERISA,' and the *Pender* court offers no general guidance on where to draw this particular line of 'importance.'" *Id.* (quoting *Pender*, 756 F. Supp. 2d at 704).

---

[2]     Although Mr. Manning also relies upon *In re Allergen ERISA Litig.*, 975 F.3d 348, 352 n.6 (3d Cir. 2020) for its favorable citation to *Dudenhoeffer*, *Allergan* did not involve § 1104(a)(1)(D), and is therefore neither controlling nor helpful to Mr. Manning.

In view of the foregoing, I conclude that Mr. Manning has not stated a claim for breach of fiduciary duty.[3] Mr. Manning pleads that "Defendants breached their fiduciary duties by following the Plan terms which violate ERISA because those terms result in participants receiving less than the actuarial equivalent of their vested accrued benefits." (Manning Action, D.I. 1 ¶ 102). Under the plain text of § 1104(a)(1)(D) and the weight of judicial authority interpreting it, Mr. Manning's allegation does not state a breach of fiduciary duty claim and I recommend that it be dismissed.

### C. Timeliness of Mr. Manning and the Hamrick Plaintiffs' Non-Fiduciary Claims

Defendants contend that Mr. Manning and the Hamrick Plaintiffs' § 502(a)(3) claims are time-barred by a one-year limitations period. (Manning Action, D.I. 10 at 5–7; Hamrick Action, D.I. 11 at 4–5). In response, Mr. Manning and the Hamrick Plaintiffs assert that no limitations period applies because Mr. Manning's "equitable claims are governed by the doctrine of laches." (Manning Action, D.I. 12 at 5–12; Hamrick Action, D.I. 13 at 4–5). Although I agree with Defendants that timeliness is governed by a statutory limitations period rather than laches, I do not recommend dismissal because Defendants do not establish that Mr. Manning and the Hamrick Plaintiffs' claims accrued more than a year before they initiated suit.

ERISA § 502(a)(3) authorizes a participant to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this

---

[3]     Mr. Manning also predicates his breach of fiduciary duty claim on the Plan's terms, arguing that because Defendants represented to participants that benefits will be paid in accordance with the Plan's terms "[e]xcept as . . . required by law," then a "'correction is necessary' to remedy the ERISA violations alleged in this case" by way of his breach of fiduciary duty claim. (Manning Action, D.I. 12 at 19). Not only this argument is unsupported by any authority, but to adopt Mr. Manning's view would require me to conclude that, as a matter of statutory interpretation, § 1104(a)(1)(D) requires fiduciaries to not follow plan documents that are not consistent with ERISA—a view that, as discussed *supra*, I do not adopt.

title or the terms of the plan." ERISA does not identify a limitations period for claims seeking recovery of benefits brought under § 502(a)(3), so courts apply the forum state's most analogous statute of limitations to evaluate timeliness.[4] *See Romero v. The Allstate Corp.*, 404 F.3d 212, 220 (3d Cir. 2005); *Syed v. Hercules, Inc.*, 214 F.3d 155, 159 (3d Cir. 2000); *Gregorovich v. E.I. du Pont de Nemours*, 602 F. Supp. 2d 511, 517 (D. Del. 2009). The Third Circuit has held that Delaware's one-year limitations period for claims for "wages, salary, or overtime for work, labor or personal services performed ... or for any other benefits arising from such work, labor or personal services performed" found at 10 *Del. C.* § 8111 is applicable to claims for "recovery of benefits." *See Richardson-Roy v. Fid. Invs.*, C.A. No. 14-371-RGA, 2015 WL 1530910, at *3 (D. Del. Apr. 1, 2015), *aff'd sub nom. Richardson-Roy v. Johnson*, 657 F. App'x 113 (3d Cir. 2016) (citing *Syed*, 214 F.3d at 159–61). In *Skinner v. E.I. Du Pont de Nemours & Co.*, this Court applied 10 *Del. C.* § 8111 to a recovery of benefits claim plead under § 502(a)(1)(B) and § 502(a)(3). C.A. No. 07-384-SLR, 2008 WL 2942145, at *3 (D. Del. July 30, 2008).

Mr. Manning and the Hamrick Plaintiffs argue that 10 *Del. C.* § 8111 is inapplicable because they seek equitable relief under § 502(a)(3) rather than for "benefits under the plan" pursuant to § 502(a)(1)(B). (Manning Action, D.I. 12 at 5–7, Hamrick Action, D.I. 13 at 5). But the complaints belie such characterizations. Mr. Manning alleges that Defendants applied improper actuarial assumptions when calculating Mr. Manning's benefits resulting in underpayment and requests that "Defendants . . . pay all benefits improperly withheld[.]" (Manning Action at 34, ¶ 78 ¶ 10 ("Accordingly, Plaintiff seeks an order from the Court (1) declaring that the Plan's formula used to determine SBO benefits produces benefits that are less than the actuarial equivalent of the SLA offered to participants; (2) requiring Defendants to pay

---

4    The parties do not dispute that Delaware law applies.

all amounts improperly withheld in the past and to be withheld in the future; (3) requiring

Defendants to recalculate Plaintiff's SBO benefits in a manner consistent with ERISA's actuarial

equivalence requirements; (4) requiring Defendants to increase the amounts of Plaintiff's future

benefit payments. . .")).  Similarly, the Hamrick Plaintiffs plead that Defendants allegedly applied

impermissible actuarial assumptions to their ILO benefits, resulting in underpayment of benefits.

(Hamrick Action, D.I. 1 ¶¶ 59–61).  The Hamrick Plaintiffs request an order "requiring Defendants

to pay . . . amounts improperly withheld[.]" (*Id.* ¶ 7 ("Accordingly, Plaintiffs seek an order from

the Court (1) declaring that the conversion factors used to determine ILO benefits violate ERISA

§ 205(g); (2) requiring Defendants to pay all amounts improperly withheld in the past; (3) requiring

Defendants to recalculate Plaintiffs' and the Class's ILO benefits in a manner consistent with

ERISA's requirements; (4) requiring Defendants to increase the amounts of Plaintiffs' and the

Class's future benefit payments; and (5) such other relief as the Court determines to be just and

equitable.")).  Thus, Mr. Manning and the Hamrick Plaintiffs seek quintessentially legal relief—

*i.e.*, the payment of money.  *cf. Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210

(2002).

Even if I were to accept Mr. Manning and the Hamrick Plaintiffs' characterization of their

claims as equitable, courts applying Delaware law nevertheless apply analogous statute of

limitations to equitable claims that seek legal relief.  *See Kraft v. WisdomTree Investments, Inc.*,

145 A.3d 969, 983 (Del. Ch. 2016) ("[A] claim may sound in equity but request legal relief—a

breach of fiduciary duty action seeking monetary damages.  Although it was not always the case,

both of these categories now generally require application of the statute of limitations by

15

analogy.")[5]  Accordingly, I conclude that 10 *Del. C.* § 8111's one-year limitations period applies to Mr. Manning and the Hamrick Plaintiffs' § 502(a)(3) claims.[6]

Next, I turn to when these claims accrued.  A non-fiduciary ERISA claim accrues on the date that the defendant clearly repudiates plaintiff's benefits.  *See Miller v. Fortis Benefits Ins., Co.*, 475 F.3d 516, 520 (3d Cir. 2007).  For example, "an erroneously calculated award of benefits under an ERISA benefit plan can trigger[ ] the statute of limitations, as long as it is (1) a repudiation; and (2) is clear and made known to the beneficiary." *Id.* at 521 (citation omitted).

Here, at the motion to dismiss stage, I cannot determine as a matter of law when Mr. Manning and the Hamrick Plaintiffs' claims accrued.  Citing the Third Circuit in *Miller*, Defendants argue that Mr. Manning and the Hamrick Plaintiffs' claim accrued "upon [the plaintiff's] initial receipt of the erroneously calculated award." (Manning Action, D.I 10 at 6; Hamrick Action, D.I. 11 at 5).  Applied to Mr. Manning, Defendants contend he should have discovered his injury on April 30, 2019, when he signed an Election Authorization Form provided by the Plan (Manning Action, D.I. 10 at 6), or on June 1, 2019, when his benefits commenced. (Manning Action, D.I. 14 at 4).  Applied to the Hamrick Plaintiffs, Defendants contend that each should have discovered his or her injury upon signing their respective Election Authorization

---

[5]      To argue that "[i]n Delaware, limitations of actions for equitable claims are governed by the doctrine of laches," Mr. Manning cites to *Nationwide Mut. Ins. Co. v. Starr*, 575 A.2d 1083 (Del. 1990).  I do not understand *Nationwide* (a case involving equitable reformation of an insurance policy) to broadly demand the application of laches to any claim plead in equity that seeks, at least in part, money damages, particularly in light of *Kraft*.

[6]      Defendants explain that the limitations period under 10 *Del. C.* § 8111 was increased to two years effective April 26, 2023, but that because Mr. Manning and the Hamrick Plaintiffs filed their complaints in March 2023, the one-year limitations period should nevertheless apply. (Manning Action, D.I. 10 at 6 n.3 (citing 2023 Del. Legis. Serv. Ch. 20); Hamrick Action, D.I. 11 at 5 n.4 (citing same)).  Neither Mr. Manning nor the Hamrick Plaintiffs contest Defendants' contention.  Thus, for purposes of the instant dispute, I conclude that § 8111's prior one-year period governs.

Forms provided by the Plan (January 19, 2019 for Ms. Hamrick, April 12, 2019 for Mr. Rodriguez, and May 13, 2019 for Mr. Beckley). (Hamrick Action, D.I. 11 at 6).

But *Miller* does not stand "for the proposition that every miscalculated [benefit] award will serve" as a "clear repudiation." *Fletcher v. Comcast Comprehensive Health & Welfare Plan*, C.A. No. 09-1272, 2011 WL 743459, at *11 (W.D. Pa. Feb. 24, 2011).[7] Comparing *Miller* to *Fletcher*, issued by the U.S. District Court for the Western District of Pennsylvania, is instructive. In *Miller*, the Third Circuit found clear repudiation at the motion to dismiss stage when "monthly checks based on a simple calculation of sixty percent of [the plaintiff's] salary should have alerted him that he was being underpaid." *Miller*, 475 F.3d at 522. Conversely, in *Fletcher*, the U.S. District Court for the Western District of Pennsylvania denied a motion for summary judgment after concluding that a reasonable juror could find that defendant's letter to plaintiff "did not alert him to the fact that something might be amiss in his benefit calculations." *Fletcher*, 2011 WL 743459, at *5 ("Careful review of the facts indicates that unlike *Miller*, this case is not about an injury that should have been discovered through a 'simple calculation' based on facts already known to plaintiff.").

Here, Mr. Manning explains that Defendants' communications do not "provide SBOs with present values that were the actuarial equivalent of the present values of the SLAs offered under the Plan" or "that determining whether two options have the same present value requires the use of actuarial mortality and interest rate assumptions." (Manning Action, D.I. 12 at 8 (citing D.I. 1 ¶¶ 27–33)). Similarly, the Hamrick Plaintiffs contend that the Election Authorization Forms do not provide any information about how Defendants calculated Plaintiffs' benefit amounts,

---

[7]     I note that nowhere in Defendants' submissions do they mention or apply the governing "clear repudiation" standard, suggesting that relief in their favor at this stage is improper.

including the actuarial assumptions on which they were based. (Hamrick Action, D.I. 13 at 7–8). Thus, taking the facts pled in the complaints in each Plaintiff's favor, as I must, I cannot conclude that Mr. Manning, by either April 30, 2019 (when he signed his Election Authorization Form) or on June 1, 2019 (when his benefits commenced), had enough information to alert him that something is amiss—that is, a repudiation. Similarly, I cannot conclude that the Hamrick Plaintiffs had such information by the time they signed their Election Authorization Forms either.

Even if I were to conclude that these events amounted to Defendants' repudiating Mr. Manning and the Hamrick Defendants' benefits, Defendants have not explained how either repudiation was "clear and made known" to Mr. Manning. For example, Mr. Manning points out that the Election Authorization Form provided the wrong benefit amount. (Manning Action, D.I. 12 at 9). On June 10, 2019, Defendants sent Manning a Pension Recalculation Notice, advising him that his pension benefit would change to $6,451 per month. (Manning Action, D.I. 13-1, Ex. 1). Defendants do not address the impact of the Pension Recalculation Notice. And Defendants do not argue that Mr. Manning's injury disclosed in any of these communications involves the kind of "simple calculation" that occurred in *Miller*.

In reaching my recommendation, I recognize that in *Miller*, the Third Circuit stated: "A statute of limitations not based on reasonable discovery is effectively no limitation at all. . . .Under this rule, a plaintiff could receive benefit checks for decades before deciding to investigate the accuracy of his award—a plaintiff could thereby trigger the statute of limitations at his own discretion, creating an indefinite limitations period." *Miller*, 475 F.3d at 522. But that pronouncement does not relieve Defendants of their burden to establish when Mr. Manning and the Hamrick Plaintiffs' claims accrued so as to obtain dismissal on timeliness grounds. Defendants may be able to meet their burden at summary judgment and establish an accrual date. But they

18

have not done so here.[8]  Nor do they raise such argument with respect to the Hamrick Plaintiffs.

Defendants have not met their burden to establish when Mr. Manning and the Hamrick Plaintiffs'

non-fiduciary claims accrued, so I do not recommend that they be dismissed at this stage.

### D.  The Hamrick Plaintiffs' Breach of Fiduciary Duty Claims

Defendants contend that the Hamrick Plaintiffs' breach of fiduciary duty claims are time-

barred by a three-year limitations period.  (Hamrick Action, D.I. 10 at 57–58).  The Hamrick

Plaintiffs' counter that they did not have "actual knowledge" sufficient to trigger the three-year

limitations period, so the six-year period applies.  (Hamrick Action, D.I. 13 at 1, 10).  I agree with

the Hamrick Plaintiffs.

Under 29 U.S.C. § 1113, a breach of fiduciary duty claim may not be brought "after the

earlier of (1) six years after . . . the date of the last action which constituted a part of the breach or

violation . . . or (2) three years after the earliest date on which the plaintiff had actual knowledge

of the breach or violation."

Defendants argue that the Hamrick Plaintiffs needed only to have knowledge of the

"material facts necessary to understand that some claim exists."  (Hamrick Action, D.I. 11 at 6).

But the Supreme Court in *Intel* recently explained the "actual knowledge" requirement triggering

§ 1113(2)'s three-year limitations period "requires more than evidence of disclosure alone." *Intel*

*Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 776–77 (2020).  Under *Intel*, "That all relevant

information was disclosed to the plaintiff is no doubt relevant in judging whether he gained

knowledge of that information.  To meet § 1113(2)'s 'actual knowledge' requirement, however,

---

[8]      For this reason, Defendants' reliance on *Dix v. Total Petrochemicals USA, Inc.,*
*Pension Plan*, 540 F. App'x 130, 133 (3d Cir. 2013) is not helpful to them as accrual was
determined at summary judgment.  I further note that Defendants waited until their Reply Brief to
raise this case with the Court.

the plaintiff must in fact have become aware of that information." *Id.* (noting that "actual knowledge" requires a plaintiff's knowledge to be "more than potential, possible, virtual, conceivable, theoretical or nominal," and not just "the hypothetical knowledge that a reasonably diligent participant would have."). Defendants do not address *Intel* in their papers.

Defendants maintain that the Hamrick Plaintiffs had all the information needed to bring their breach of fiduciary duty claims at the time they each signed their respective Pension Election Authorization Forms between January and May 2019. (Hamrick Action, D.I. 11 at 7). Specifically, Defendants maintain that those forms contained "(a) Plaintiffs' elected forms of payment, (b) the amount of the monthly benefit payments each Plaintiff would receive upon their benefit start dates, and (c) the amount of the monthly benefit payment each Plaintiff would receive on and after age 62 once leveled under the ILO." (*Id.*). But Defendants do not explain how knowledge of those facts alone was enough to place the Hamrick Plaintiffs on actual notice of Defendants' alleged breaches. Indeed, while Defendants cite to *Fiorentino v. Bricklayers & Allied Craftworkers Loc. 4 Pension* for the proposition that, "[a] finding of actual knowledge requires proof of 'knowledge of all relevant facts at least sufficient to give the plaintiff knowledge that a fiduciary duty has been breached or ERISA provision violated,'" Defendants offer neither proof nor argument to satisfy that standard. 696 F. App'x 594, 598 (3d Cir. 2017) (citation omitted). And, *Fiorentino* was resolved at summary judgment, not at the motion to dismiss stage.[9]

---

[9]     Although Defendants rely on *Koert v. GE Group Life Assurance Co.*, which was decided on a motion to dismiss, that case is factually distinguishable. 231 F. App'x 117 (3d Cir. 2007). There, the plaintiff alleged breaches of fiduciary duties based on the defendant's wrongful denial of her claim, as well as the manner in which the defendant notified the plaintiff of the denial. The Third Circuit explained that:

Thus, at this stage, I cannot conclude that knowledge of these facts alone necessarily means that the Hamrick Plaintiffs became in fact aware "of the breach or violation."  29 U.S.C. § 1113(2).[10]  Thus, I do not recommend dismissal of the Hamrick Plaintiffs' breach of fiduciary duty claims.

## IV.  CONCLUSION

For the reasons set forth above, I recommend that Defendants' Motions be GRANTED-IN-PART and DENIED-IN-PART as follows:

1.  With respect to the Manning Motion:

    a.  DENIED with respect to dismissing Mr. Manning's First Claim for Relief due to untimeliness;

    b.  GRANTED with respect to dismissing Mr. Manning's First Claim for Relief for failure to state an anti-forfeiture claim, but otherwise DENIED;

    c.  GRANTED with respect to dismissing Mr. Manning's Second Claim for Relief for failure to state a claim;

2.  The Hamrick Motion is DENIED.

---

We readily conclude that Koert became aware of these facts at the time she was notified that her claim had been denied. When a fiduciary makes an outright repudiation of its obligation to pay its beneficiary, as GE did in this case, it is reasonable to expect that the statute of limitations began to run at that point. Finally, Koert's actual knowledge of her ability to file a claim is established conclusively by her statement in May 2001 that "I do not wish to file any lawsuit...." As such, the three-year period has run and Koert's claims are time-barred.

*Id.* at 121. Defendants do not argue that any similar facts are present here.

[10]    Citing to *Masten v. Metro. Life Ins. Co.*, 543 F. Supp. 3d 25, 38 (S.D.N.Y. 2021), Defendants argue that I should "'reasonably infer that [Plaintiffs] had knowledge of the alleged fiduciary breach as of, or soon after,'" the date that Plaintiffs 'received [their] first payment under the plan.'" (Hamrick Action, D.I. 15 at 6–7).  Defendants waited until their Reply to raise this argument, so I consider it waived. *See Cohen v. Cohen*, C.A. No. 19-1219-MN, 2022 WL 952842, at *4 (D. Del. Mar. 30, 2022) ("Defendant waived this argument by first making it in his reply brief, not his opening brief.").

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: January 31, 2024

Laura D. Hatcher
United States Magistrate Judge