IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARY J. HAMRICK, DAVID B. BECKLEY, and VALENTIN RODRIGUEZ, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>E.I. DU PONT DE NEMOURS AND COMPANY, the ADMINISTRATION COMMITTEE OF THE DUPONT PENSION AND RETIREMENT PLAN, and JOHN/JANE DOES 1-5,<br><br>        Defendants. | C.A. No. 23-238-JLH-LDH<br><br><br>FILED<br><br>FEB - 9 2026<br><br>U.S. DISTRICT COURT DISTRICT OF DELAWARE |
| JAMES M. MANNING, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>EIDP, INC. f/k/a E.I. du Pont de Nemours and Company, THE ADMINISTRATION COMMITTEE OF THE DUPONT PENSION AND RETIREMENT PLAN and JOHN/JANE DOES 1-5,<br><br>        Defendants. | e<br><br>C.A. No. 23-271-JLH-LDH |

## REPORT AND RECOMMENDATION

   This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C.

§ 1001, et seq. ("ERISA"). Pending before the Court is Defendants EIDP, Inc. f/k/a E.I. du Pont

de Nemours and Company, the Administrative Committee of the DuPont Pension and Retirement

Plan and the Committee's members (collectively, "Defendants") motion for summary judgment on two class action complaints filed by Plaintiff James M. Manning (No. 23-271-JLH-LDH, the "Manning Action") and Plaintiffs Mary J. Hamrick, David B. Beckley, and Valentin Rodriguez (collectively, the "Hamrick Plaintiffs", and together with Mr. Manning, "Plaintiffs") (No. 23-238-JLH-LDH, the "Hamrick Action"). The Hamrick Plaintiffs assert that Defendants "improperly reduced [Income-Leveling Option ("ILO")] benefits for participants and beneficiaries below the amounts that they would receive if those benefits had been calculated using the Treasury Assumptions in violation of ERISA § 205(g), 29 U.S.C. § 1055(g)." (Hamrick Action, D.I. 1 ¶ 71). Mr. Manning assert that Defendants "improperly reduced [Spouse Benefit Options ("SBOs")] for participants and beneficiaries of the Plan below the amounts that they would receive if those benefits were actuarially equivalent to a [single life annuity ("SLA")] in violation of ERISA § 205(d), 29 U.S.C. § 1055(d)." (Manning Action, D.I. 1 ¶ 90). In their motion for summary judgment, Defendants maintain that Plaintiffs' complaints are untimely and barred by the statute of limitations. (Hamrick Action, D.I. 51; Manning Action, D.I. 52).

Also pending before the Court are Plaintiffs' Motion to Supplement Record and File Supplement to Answering Brief in Opposition to Defendants' Motion for Summary Judgment (Hamrick Action, D.I. 77; Manning Action, D.I. 77), and Defendants' Motion for Leave to File Sur-Reply in Opposition to Plaintiffs' Motion to Supplement Record. (Hamrick Action, D.I. 92; Manning Action, D.I. 91).

For the following reasons, I recommend denying Defendants' motion for summary judgment without prejudice to Defendants' raising timeliness at trial, denying as moot Plaintiffs' motion to supplement the summary judgment record, and denying as moot Defendants' motion for leave to file a sur reply opposing Plaintiffs' motion to supplement the summary judgment record.

## I.    BACKGROUND[1]

### A. The Plan

Defendant EIDP, Inc. sponsors a Pension and Retirement Plan (the "Plan") offering various benefit options to Plan participants.  Plan participants may elect to receive an SLA, may select from various joint and survivor annuities, which the Plan calls SBOs, and the Plan permits certain participants to elect additional survivor benefits under a Joint and Survivor Option ("JSO"). The Plan also permits certain participants to select an ILO.

Before electing their benefits, Plaintiffs received a "retirement kit" describing the details of their pension calculations and explaining the different options available to them.  Included in the kit were the following: Pension Election Worksheet; a Pension Calculation Statement listing the benefit options available, the specific monthly payment amounts that would be due to each plaintiff and his or her beneficiaries, where applicable, under each option; a Pension Option Descriptions document describing the various benefits including the SBO and ILO; a Relative Value Notice describing the value of the payment options and noting "all approximately equal in relative value" to the Plan's SLA; and instructions directing Plaintiffs to the Plan's Summary Plan Description ("SPD") for more information about how their payments were calculated.

With respect to Mr. Manning, the SPD explained that "[t]he cost for the Spouse Benefit Option is paid for by a reduction to your monthly pension payment" which is "actuarially determined, taking into account your age and the age of your Spouse as of your pension start date, the level of benefit elected (50% or 75%), and the Plan's investment return rate."  With respect to the Hamrick Plaintiffs, the SPD explained that to calculate an ILO, a participant's "Title I benefit

---

[1]     Facts are undisputed unless otherwise specified.  Citations to "D.I." refer to the Hamrick Action (No. 23-238-JLH-LDH) unless otherwise noted.

is adjusted (using his PSSB and a plan factor based on [] age and the plan's investment return rate." The SPD informed participants that they had the right to examine all governing documents, including obtaining copies of the Plan document itself, and to file a claim if they had concerns about their benefits. The retirement kits listed a phone number to call "for more information" and a link to the DuPont Connection website containing information about calculation of their pension payments. No plaintiff requested a copy of the Plan document.

All plaintiffs elected their benefits in 2019. On January 19, 2019, Ms. Hamrick elected to receive pension benefits as an SLA with an ILO. On May 13, 2019, Mr. Beckley elected to receive pension benefits under a 50% SBO with an ILO. On April 12, 2019, Mr. Rodriguez elected to receive pension benefits as an SLA with an ILO. On April 30, 2019, Mr. Manning elected to receive benefits under a 75% SBO with "Max J&S."

Some plaintiffs also received a benefit recalculation notice in 2019 providing a "final calculation" of their benefits. Ms. Hamrick received hers on February 6, 2019, explaining that her pension payments were being increased to $2,157 per month before the age of 62 and then $1,124 thereafter based on "updated information." Mr. Beckley received his on June 6, 2019, explaining that his pension payments were being increased to $2,539 per month before the age of 62 and then $1,124 thereafter based on "updated information." Mr. Manning received his on June 10, 2019, explaining that his pension payment was being increased to $6,451 per month based on "updated information."

Plaintiffs received their pension payments consistent with their benefit elections and recalculation notices (if applicable) each month from 2019 to the present.

4

**B. Plaintiffs' Actions**

On March 3, 2023, the Hamrick Plaintiffs initiated the instant two-count class action against Defendants, arguing that Defendants "did not use the Treasury Assumptions to calculate ILO benefits" in violation of ERISA § 205(g), 29 U.S.C. § 1055(g). (Hamrick Action, D.I. 1 ¶¶ 6, 71). According to their Complaint, "Defendants instead used an antiquated formula comprised of an interest rate that was higher than the 'applicable interest rate,' and a mortality table that DuPont developed in 1985 that is materially different from the 'applicable mortality table.'" (*Id.*) "The net result from Defendants' failure to use the Treasury Assumptions is that Plaintiffs' and each Class member's ILO benefits are lower than ERISA § 205(g) requires." (*Id.*) The Hamrick Plaintiffs' non-fiduciary claim seeks "declaratory and equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). (*Id.* at 22). The Hamrick Plaintiffs also asserted a breach of fiduciary duty claim under ERISA §§ 404 and 502(a)(3), 29 U.S.C. §§ 1104 and 1132(a)(3)). (*Id.* at 23).

On March 13, 2023, Mr. Manning initiated the instant two-count class action against Defendants, arguing that Defendants applied a "reduction factor" to calculate SBOs that was "excessive" and resulted in "reducing participants' benefits below an actuarially equivalent amount as required by ERISA § 205(d), 29 U.S.C. § 1055(d). (Manning Action, D.I. 1 ¶¶ 8, 80). Mr. Manning explained that "[t]he Plan's reduction factors are consistent with factors produced by the 1971 GAM mortality table, which used mortality date from the 1960s" and the Plan "defines 'actuarial equivalence' as the benefit calculated using the "1985 DuPont Pensioner Mortality Table." (*Id.* ¶ 8). Therefore, according to Mr. Manning, "Defendants reduce participants' benefits by too much when they select an SBO, resulting in participants receiving monthly payments that are materially lower than they would be if Defendants used reduction factors based on up-to-date, reasonable actuarial assumptions." (*Id.* ¶ 9). Mr. Manning's non-fiduciary claim seeks

5

"declaratory and equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). (*Id.* at 29). Mr. Manning also asserted a breach of fiduciary duty claim under ERISA §§ 404 and 502(a)(3), 29 U.S.C. §§ 1104 and 1132(a)(3). (*Id.* at 30).

Defendants moved to dismiss Plaintiffs' complaints, arguing that they fail to state a claim and are otherwise time-barred. (Hamrick Action, D.I. 10, Manning Action, D.I. 9). On January 31, 2024, I issued a Report and Recommendation recommending granting the motion to dismiss with respect to Mr. Manning's fiduciary duty claim for failure to state a claim, but denying the motion with respect to the Hamrick Plaintiffs' fiduciary duty claim. (Hamrick Action, D.I. 21; Manning Action, D.I. 20). I also recommended denying Defendants' motion to dismiss Plaintiffs' non-fiduciary claims on timeliness grounds after concluding that Defendants had not established at the motion to dismiss stage when Plaintiffs' non-fiduciary claims accrued. (*Id.*). The parties filed various objections (Hamrick Action, D.I. 22; Manning Action, D.I. 21, D.I. 22) which Judge Hall overruled in adopting my Report and Recommendation. (Hamrick Action, D.I. 24; Manning Action, D.I. 27).

On September 10, 2024, the Court entered a Scheduling Order granting Defendants' leave to request filing an early dispositive motion on whether Plaintiffs' claims are barred by the statute of limitations. (D.I. 31 ¶ 10). On November 7, 2024, the Court approved the parties' stipulation to dismiss the Hamrick Plaintiffs' fiduciary duty claim, leaving only Plaintiffs' non-fiduciary claims live. (D.I. 39).

On February 4, 2025, the Court permitted Defendants to file an early motion for summary judgment "addressing whether Plaintiffs' claims are barred by the statute of limitations" and entered a briefing schedule. (D.I. 50). Defendants moved for summary judgment on March 14, 2025 (D.I. 51); the motion has been fully briefed. (D.I. 52, 58, 64). Plaintiffs filed a Notice of

Supplemental Authority in Opposition to Defendants' Motion for Summary Judgment on July 21, 2025 (D.I. 68), to which Defendants responded (D.I. 69).  On September 4, 2025, Plaintiffs filed a "Motion to Supplement Record and File Supplement to Answering Brief in Opposition to Defendants' Motion for Summary Judgment" (D.I. 77 (motion and opening brief); D.I. 88 (reply brief)), which Defendants opposed (D.I. 58).  On October 3, 2025, Defendants filed a "Motion for Leave to File Sur-Reply in Opposition to Plaintiffs' Motion to Supplement Record" (D.I. 92), which Plaintiffs opposed (D.I. 93).

On September 9, 2025, Judge Hall referred this case to me "to hear and resolve all pre-trial matters up to and including summary judgment, subject to 28 U.S.C. § 636(b) and any further order of the Court."  (D.I. 79).  On October 1, 2025, I entered a stipulated order staying certain deadlines "pending final resolution by the Court of Defendants' Motion for Summary Judgment addressing whether Plaintiffs' claims are barred by the statute of limitations."  (D.I. 90).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). In opposing summary judgment, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings" and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* (quotation omitted). "[I]nstead, he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted).  If he fails to make this

showing, then the Court may "consider the fact undisputed for purposes of the motion" and/or

"grant summary judgment if the motion and supporting materials—including the facts considered

undisputed—show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(2), (3).

## III.    DISCUSSION

Defendants argue that Plaintiffs' claims are subject to a one-year[2] statute of limitations

under 10 *Del. C.* § 8111 and that they are time-barred.  Plaintiffs maintain that laches rather than

the statute of limitations governs the timeliness of their claims, and further argue that there are

genuine disputes of material fact as to when their claims accrued.  I agree with Defendants that

Plaintiffs' claims are subject to a one-year limitations period under 10 *Del. C.* § 8111.  I agree with

Plaintiffs, however, that there is a genuine dispute of material fact as to whether Plaintiffs were

sufficiently diligent in pursuing their claims.

### A. Whether Plaintiffs' Claims Are Subject to a One-Year Statute of Limitations Under 10 *Del. C.* § 8111

The parties litigated this issue at the motion to dismiss stage.  Defendants moved to dismiss

on timeliness, and I issued a Report and Recommendation concluding that, although Plaintiffs'

§ 502(a)(3) claims are governed by 10 *Del. C.* § 8111's one-year limitations period, Defendants

had not established at the motion to dismiss stage that Plaintiffs' claims accrued more than a year

before they initiated suit.  (D.I. 21).  Plaintiffs objected to my conclusion with respect to applying

a statute of limitations rather than laches (D.I. 22) and Defendants responded (D.I. 23).  Judge Hall

denied Plaintiffs' objections on grounds that they "violate (1) this Court's rules by failing to

_____

[2]      In their motion to dismiss briefing, Defendants explained that, although the limitations period under 10 *Del. C.* § 8111 was increased to two years effective April 26, 2023, the pre-amendment one-year limitations period applies because Plaintiffs filed their complaints in March 2023.  (Manning Action, D.I. 10 at 6 n.3 (citing 2023 Del. Legis. Serv. Ch. 20); Hamrick Action, D.I. 11 at 5 n.4 (citing same)).  Plaintiffs have not disputed this.  Thus, I consider whether § 8111's pre-amendment version applies.

8

identify the appropriate standard of review, and (2) this Court's standing order by failing to include a written statement certifying that the objections do not raise new arguments." (D.I. 24 at 2). Judge Hall also noted that she "would also deny the objections because, as Plaintiffs acknowledge, they object only to the Report and Recommendation's non-binding dicta." (*Id.*, citing D.I. 22 (Plaintiffs' Objections) at 2 (acknowledging that "because the R & R did not dismiss any claims on the basis of the statute of limitations, the Court does not need to rule on these issues now")).

In their motion for summary judgment, Defendants maintain that Plaintiffs' claims are subject to the one-year limitations period in 10 *Del. C.* § 8111. (D.I. 52 at 8). Plaintiffs continue to argue that no statute of limitations applies, and that timeliness concerns should be addressed via laches. (D.I. 58 at 2). I agree with Defendants.

Plaintiffs' claims arise under § 502(a)(3), 29 U.S.C. § 1132(a)(3), which provides a non-fiduciary cause of action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." ERISA "does not set any limitations period for non-fiduciary claims brought pursuant to [§ 502(a)(3)]." *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir. 1992). Because ERISA does not specify a statute of limitations for § 502(a)(3), we are directed to "apply the statute of limitations for the [forum] state claim most analogous to the ERISA claim pursued"—here, Delaware. *Gluck*, 960 F.2d at 1179; *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 (3d Cir. 2007); *Romero v. Allstate Corp.*, 404 F.3d 212, 220 (3d Cir. 2005); *Syed v. Hercules, Inc.*, 214 F.3d 155, 159 (3d Cir. 2000); *Gregorovich v. E.I. du Pont de Nemours*, 602 F. Supp. 2d 511, 517 (D. Del. 2009). "The first step in borrowing a local time limitation is to determine the 'state claim most analogous to the ERISA claim pursued.'" *Gluck*, 960 F.2d at 1179.

In *Syed v. Hercules Inc.*, the Third Circuit concluded that 10 *Del. C.* § 8111 applied to a plaintiff's claim for benefits under ERISA § 502(a)(1)(B). 214 F.3d 155, 158–59 (3d Cir. 2000); *Richardson-Roy v. Fid. Invs.*, No. 14-371-RGA, 2015 WL 1530910, at *3 (D. Del. Apr. 1, 2015), *aff'd sub nom. Richardson-Roy v. Johnson*, 657 F. App'x 113 (3d Cir. 2016) (applying 10 *Del. C.* § 8111 "to claims for recovery of benefits under an ERISA plan"). The *Syed* court recognized that while every other circuit to address the issue applied the statute of limitations for a state contract action, Delaware had "two statutes of limitation for contract disputes . . . [and] we must determine which is more appropriate." *Syed*, 214 F.3d. at 159. The court had to decide between a three-year limitations period for "general actions on a promise" and 10 *Del. C.* § 8111's one-year limitations period covering claims "for any other benefits arising from such work, labor or personal services performed." *Id.* (quoting 10 *Del. C.* § 8111).

In finding 10 *Del. C.* § 8111 most analogous, the Third Circuit relied on the Delaware Supreme Court's application of 10 *Del. C.* § 8111's predecessor to a pre-ERISA state claim challenging the denial of benefits under a disability wage plan. *Id.* at 159–60 (citing *Mitchell v. E.I. duPont deNemours & Co.*, 310 A.2d 641, 642 (Del. 1973)). As explained by the Third Circuit, the Delaware Supreme Court "reasoned that the plan at issue was a 'benefit' arising from work, labor, or services performed within the meaning of the statute because eligibility for the plan accrued from tenure on the job." *Id.* (citing *Id.*). Therefore, "the application of § 8111's predecessor in the pre-ERISA context is strong evidence of its close relationship to the ERISA claim that [plaintiff] asserts." *Id.* (citing *Sorensen v. Overland Corp*, 142 F. Supp. 354, 360 (D. Del. 1956), *aff'd sub nom. Sorensen v. Overland Corp.*, 242 F.2d 70 (3d Cir. 1957) ("The one year statute has a comprehensive sweep. It was intended to bar all claims arising out of the employer-employee relationship. The Act bars claims for 'wages', 'salary', and it likewise applies to

10

'overtime' and to any other 'benefits' arising from the corporate-officer employment relationship. The word 'benefits' is embracing and covers all advantages growing out of the employment.")).

At least one district court in the District of Delaware has applied 10 *Del. C.* § 8111 to a recovery of benefits claim arising under § 502(a)(1)(B) and § 502(a)(3). *Skinner v. E.I. Du Pont de Nemours & Co.*, No. 07-384-SLR, 2008 WL 2942145, at *3 (D. Del. July 30, 2008). Consistent with *Syed* and *Skinner*, Defendants contend that 10 *Del. C.* § 8111 applies to Plaintiffs' § 502(a)(3) claims here because Plaintiffs' complaints seek the recovery of benefits. I agree.

That Plaintiffs seek the recovery of benefits is evident from the face of Plaintiffs' complaints. Mr. Manning alleges that Defendants applied improper actuarial assumptions when calculating Mr. Manning's benefits resulting in underpayment and requests that "Defendants . . . *pay all benefits* improperly withheld[.]" (Manning Action, D.I. 1 ¶ 10 ("Accordingly, Plaintiff seeks an order from the Court (1) declaring that the Plan's formula used to determine SBO benefits produces benefits that are less than the actuarial equivalent of the SLA offered to participants; (2) requiring Defendants to pay all amounts improperly withheld in the past and to be withheld in the future; (3) requiring Defendants to recalculate Plaintiff's SBO benefits in a manner consistent with ERISA's actuarial equivalence requirements; (4) requiring Defendants to increase the amounts of Plaintiff's future benefit payments. . .")). Similarly, the Hamrick Plaintiffs plead that Defendants allegedly applied impermissible actuarial assumptions to their ILO benefits, resulting in underpayment of benefits. (Hamrick Action, D.I. 1 ¶¶ 59–61). The Hamrick Plaintiffs similarly request an order "requiring Defendants to pay . . . amounts improperly withheld[.]" (*Id.* ¶ 7 ("Accordingly, Plaintiffs seek an order from the Court . . . (2) requiring Defendants to pay all amounts improperly withheld in the past; (3) requiring Defendants to recalculate Plaintiffs' and the Class's ILO benefits in a manner consistent with ERISA's requirements; (4) requiring

Defendants to increase the amounts of Plaintiffs' and the Class's future benefit payments . . .").

Plaintiffs do not explain why these allegations do not fall within 10 *Del. C.* § 8111's

"comprehensive sweep" as the word "benefits" as used in the statute "is embracing and covers all

advantages growing out of the employment." *Syed*, 214 F.3d. at 159 (citing *Sorensen*, 142 F. Supp.

at 360).

Plaintiffs nevertheless contend that they do not seek the recovery of benefits under the

terms of the Plan but instead "seek equitable relief in the form of increased benefits that comply

with ERISA," and that such claims seeking equitable relief are subject to laches rather than a

statute of limitations. (D.I. 58 at 2–5). To support that view (and ostensibly identify the "state

claim most analogous to the ERISA claim pursued" as *Gluck* instructs, *Gluck*, 960 F.2d at 1179),

Plaintiffs rely on *Nationwide Mut. Ins. Co. v. Starr*, 575 A.2d 1083 (Del. 1990) to argue that a

claim "to reform the contract [was] an equitable remedy and not subject to the statute of

limitations." (D.I. 58 at 4; *see also* D.I. 12 at 6, "Accordingly, under *Nationwide*, the doctrine of

laches applies."). But Plaintiffs do not plead reformation in their complaints. (Hamrick Action,

D.I. 1; Manning Action, D.I. 1). Moreover, I do not understand *Nationwide* (a case involving

equitable reformation of an insurance policy) to broadly demand the application of laches to any

claim plead in equity that seeks, at least in part, money damages, particularly in light of the

Delaware Court of Chancery's disposition in *Kraft v. WisdomTree Investments, Inc.*, 145 A.3d 969

(Del. Ch. 2016).

In *Kraft*, the court explained that "a claim may sound in equity but request legal relief—a

breach of fiduciary duty action seeking monetary damages. Although it was not always the case,

both of these categories now generally require application of the statute of limitations by analogy."

*Id.* at 983.[3]  Plaintiffs here seek quintessentially legal relief—*i.e.*, the payment of money.  *cf.*

*Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002).[4]  Although Plaintiffs now

argue that they "seek a broad range of equitable remedies" including "a reprocessing injunction to

have their benefits recalculated in accordance with ERISA and paid in the recalculated amounts,"

(D.I. 58 at 3),  Plaintiffs do not seek a "reprocessing order" in their Complaints.  (Hamrick Action,

D.I. 1; Manning Action, D.I. 1).  *See Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir.

2008) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a

motion for summary judgment.").  Neither did Plaintiffs argue that they sought a reprocessing

---

[3]      *See also PXP Producing Co. LLC v. MitEnergy Upstream LLC*, 342 A.3d 402, 407 (Del. Ch. 2025) ("Broadly speaking, this Court recognizes three timeliness defenses: laches in equity, statutes of limitations at law, and statutes of limitations applied by analogy in equity. Laches is an equitable doctrine that operates to prevent the enforcement of a claim in equity where a plaintiff has delayed unreasonably in bringing suit. For legal claims seeking legal relief, [s]]tatutes of limitations exist at law and serve to bar claims brought after the limitations period. When sitting in equity, and hearing an equitable claim seeking a legal remedy or a legal claim seeking equitable relief, this Court is not strictly bound by statutes of limitations, but may apply them by analogy. . . . When this Court applies a statute of limitations by analogy, those same principles govern. Where legal claims find their way into Chancery in search of an equitable remedy, this Court applies the applicable statute of limitations by analogy.  This concept arose to ensure a plaintiff cannot evade a legal claim's statutory time bar by requesting equitable relief. It expanded to include the opposite circumstance—an equitable claim requesting a legal remedy, such as damages for a breach of fiduciary duty. The point is to align with the timing expectations that would govern if the claim were heard at law.") (internal citations and quotation marks omitted).

[4]      I reached the same conclusion in my Report and Recommendation, noting that "courts applying Delaware law nevertheless apply analogous statute of limitations to equitable claims that seek legal relief." (D.I. 21 at 15, citing *Kraft*, 145 A.3d at 983). To the extent Plaintiffs objected to that portion of the Report and Recommendation, Plaintiffs argue that, "The R&R mistakenly relied on Delaware law in concluding that Plaintiff seeks legal relief and monetary damages R & R at 15.  While a claim for breach of fiduciary duty may seek legal relief such as money damages under Delaware law, this case is governed by ERISA § 502(a)(3) . . . not state law." (D.I. 22 at 10).  But Plaintiffs relied on Delaware law in opposing Defendants' motion to dismiss, too. (D.I. 13 at 4, "In Delaware, limitations of actions for equitable claims are governed by the doctrine of laches."; *Id.* at 4–5, "The same is true here. Plaintiffs bring an equitable claim under ERISA §502(a)(3) based on Defendants' failure to provide actuarially equivalent benefits like ERISA requires. Accordingly, under *Nationwide* [*Mut. Ins. Co. v. Starr*, 575 A.2d 1089 (Del. 1990)], the doctrine of laches applies.").

13

order in either their answering brief opposing Defendants' motion to dismiss (D.I. 13) or in any objections to my Report and Recommendation. (D.I. 22).

It appears that Plaintiffs' position has evolved a little bit over time. In their answering brief opposing summary judgment,[5] Plaintiffs now maintain that "[b]ecause Delaware law does not provide an analogous claim under Delaware law, no Delaware limitation period applies by analogy." (D.I. 58 at 3). According to Plaintiffs, "Delaware law does not recognize actions seeking an injunction or other equitable relief when a plan's benefit calculations violate ERISA" and "[n]or does Delaware have an actuarial equivalence requirement concerning pension benefits." (*Id.*). But accepting Plaintiffs' narrow framing of what constitutes an "analogous claim" under Delaware law would offend the Third Circuit's reasoning in *Syed*.

Under *Syed*, a court "must choose" an analogous statute based on what is the "best fit." *Syed*, 214 F.3d at 16 ("We are inclined to agree with the dissent that the one-year limitations period of § 8111 is not optimal . . . But forced to identify the most analogous Delaware statute of limitations, we agree with the District Court that § 8111 is the best fit."). Plaintiffs point to no authority under which a court may disregard its obligation to identify such an analogous statute of limitations. Indeed, the Third Circuit has rejected as "contrary to established precedent" a plaintiff's argument that his claim "was not governed by *any* statute of limitations." *Dix v. Total Petrochemicals U.S.A., Inc., Pension Plan*, 540 F. App'x 130, 133 n.2 (3d Cir. 2013) (emphasis added) (citing *Romero*, 404 F.3d at 221 (applying six-year statute of limitations under Pennsylvania law even after "[t]he parties have not identified an analogous state law claim and [the court has] not found one.")); *Richardson-Roy*, 2015 WL 1530910, at *3 ("ERISA does not

---

[5]   Plaintiffs did not raise this argument in their answering brief opposing Defendants' motion to dismiss and did not rely on *Kraft* therein. (D.I. 13). Nor did Plaintiffs raise this argument in their objections to my Report and Recommendation.   (D.I. 22).

contain a statute of limitations for recovery of benefits, but that does not mean there is no statute of limitations for such claims. The Court establishes a statute of limitations by looking to the statute of limitations for the state law claim that is most analogous to the claim for benefits under ERISA.").

Plaintiffs try to avoid *Syed* by arguing that they have plead a § 502(a)(3) claim, not a § 502(a)(1)(B) claim. (D.I. 58 at 5, "Plaintiffs are not asserting a claim for benefits under the Plan's terms pursuant to ERISA § 502(a)(1)(A). Rather, Plaintiffs seek equitable relief under ERISA § 502(a)(3)."). But courts regularly apply analogous state statute of limitations to claims alleging that written plan terms violate ERISA—including for § 502(a)(3) claims asserting actual equivalence requirements violations and complaints that plead allegations similar to what Plaintiffs assert here. *See Scott v. AT&T Inc.*,[6] 790 F. Supp. 3d 781, 796 (N.D. Cal. 2025) (applying Texas's four-year statute of limitations for breach of contract to determine whether a § 502(a)(3) claim asserting actuarial equivalence violations was time-barred);[7] *Urlaub v. CITGO Petroleum Corp.*,

---

[6]    Plaintiffs highlight *Scott* in their Notice of Supplemental Authority for its analysis of when an ERISA § 502(a)(3) claim accrues. (D.I. 68).

[7]    *Compare Scott v. AT&T Inc.*, No. 20-7094-JD (N.D. Cal.) at D.I. 197 ¶¶ 14-19 (Third Amended Complaint) ("Plaintiffs bring this action on behalf of the Classes pursuant to ERISA § 502(a)(2) and (a)(3), 29 U.S.C. 1132(a)(2) and (a)(3) for all appropriate equitable relief, including but not limited to: a declaration that the Plan's Joint and Survivor Annuity Factors violate ERISA's actuarial equivalence and non-forfeitability requirements as to the Classes; an injunction requiring Plan fiduciaries to ensure that the Plan pays actuarially equivalent benefits to all Class members; an injunction requiring AT&T Inc. to amend the Plan terms to comply with ERISA; reformation of the Plan as to the Classes to bring its terms into compliance with ERISA; and recalculation of benefits for all Class members who received a Joint and Survivor Annuity Benefit, and payment to them of the amounts owed under an ERISA-compliant plan."), *with* Manning Action, D.I. 1 ¶¶ 93–94 ("Plaintiff seeks declaratory relief, determining that the methodologies used by Defendants for calculating SBOs violate ERISA because they do not provide an actuarially equivalent benefit, as required by ERISA § 205(d), 29 U.S.C. § 1055(d), and deprived Plaintiff of his vested benefits in violation of ERISA § 203(a), 29 U.S.C. 29 U.S.C. § 1053(a) [sic]. Plaintiff seeks an order from the Court providing a full range of equitable relief, including but not limited to: (a) re-calculation, correction, and payment of SBOs benefits previously paid under the Plan; . . . (h) an injunction

750 F. Supp. 3d 863, 871 (N.D. Ill. 2024) (subjecting plaintiffs' § 502(a)(3) claims based on defendants having "employed actuarial assumptions 50 years out of date" when calculating joint and survivor annuity in violation of ERISA to a four-year statute of limitations period); *Dix*, 540 F. App'x at 132 (applying six-year limitations period to claim that plan's exclusion of cost-of-living adjustments from lump sum payment violated ERISA). Plaintiffs do not cite to any authority where a court declined to apply a statute of limitations in favor of laches on a § 502(a)(3) claim.

Finally, even if I were to conclude that Plaintiffs alleged an equitable claim or sought equitable relief sufficient to invoke laches, that would allow Defendants to deploy laches as an affirmative defense *in addition to the statute of limitations*.[8] *Verizon Emp. Benefits Comm. v. Irizarry* illustrates this principle. No. 23-1708 (MAS) (DEA), 2024 WL 415692 (D.N.J. Feb. 5,

---

against further violations"), Hamrick Action, D.I. 1 ¶¶ 73–74 ("Pursuant to [ERISA § 502(a)(3)], 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief, determining that the methodologies used by Defendants for calculating ILOs violate ERISA because they do not provide benefit amounts that are at least equal to the amounts when calculated by the Treasury Assumptions, as required by ERISA § 205(g), 29 U.S.C. § 1055(g). Plaintiffs seek an order from the Court providing a full range of equitable relief, including but not limited to: (a) an injunction to re-calculate, correct, and pay ILO benefits previously paid under the Plan; (b) an injunction to re-calculate, correct, and pay ILO benefits to be paid under the Plan.").

For completeness, I note that plan at issue in *Scott* contained a Texas choice-of-law provision, and that the parties agreed without objection from the court that the most analogous statute is Texas's four-year statute of limitations for breach of contract. *Scott*, No. 20-07094-JD at D.I. 153 at 23 (Defendants' brief); D.I. 168 at 23 n.15 (Plaintiffs' brief).

[8]      Another example of this principle is found in *Young v. Verizon's Bell Atl. Cash Balance Plan*, where the defendant/counterclaim plaintiff alleged a counterclaim for equitable reformation. 615 F.3d 808, 821–22 (7th Cir. 2010). After applying Pennsylvania's four-year statute of limitations to the reformation counterclaim and analyzing when such a claim would accrue, the court explained that the counterclaim would be "subject to the traditional equitable defenses at common law, provided that they are not inconsistent with ERISA," to include laches. *Id.* at 816-817; 821-822. I note that Plaintiffs cite this case for its analysis on the "clear repudiation" standard governing accrual for statute of limitations purposes with respect to the plaintiff/counterclaim defendant's claim for benefits; they omit any discussion of its bearing on laches. They did not rely upon this case at the motion to dismiss stage for laches either; nor did they raise it in their objections to my Report and Recommendation.

2024).    There, a plan fiduciary-plaintiff sued a plan beneficiary-defendant under § 502(a)(3) to recover overpaid pension benefits made to the defendant. *Id.* at *1-2. The beneficiary-defendant moved to dismiss, *inter alia*, on timeliness grounds, pointing to both an analogous six-year statute of limitations under New Jersey law and the operation of laches. *Id.* at *3. On the statute of limitations issue, the court agreed that the fiduciary-plaintiff's claim was analogous to a claim for unjust enrichment and was governed by New Jersey's six-year statute of limitations applicable to either claims for breach of contract, quasi-contract, or unjust enrichment. *Id.* The court also analyzed timeliness under laches, eventually denying the beneficiary-defendant's motion because laches is a "fact sensitive inquiry" not fully assessable at the motion to dismiss stage. *Id.* at *7–8. Importantly, the court disagreed with the beneficiary-plaintiff's argument that laches does not apply "because this claim is 'governed by a specific statute of limitations.'" *Id.* at *8 n.6. The court explained: "It is true that 'in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief.'" *Id.* (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 679 (2014)). "But Congress never enacted a statute of limitations for private ERISA claims." *Id.* (citing *Gluck*, 960 F.2d at 1179). "This circuit has also previously held that laches applies to ERISA claims." *Id.* (citing *Fotta v. Trs. of United Mine Workers of Am., Health & Ret. Fund of 1974*, 165 F.3d 209, 214 (3d Cir. 1998)). "The Court, therefore, will not deny Defendant's motion on this basis." *Id.* Thus, even if Plaintiffs were correct, the answer would be to apply both, not laches to the exclusion of the statute of limitations.

* * *

Accordingly, 10 *Del. C.* § 8111's one-year limitations period applies to Plaintiffs' § 502(a)(3) claims.

## B.  When Plaintiffs' Claims Accrued

Defendants contend that Plaintiffs' claims accrued in 2019 when they made their pension elections, received documents from Defendants "making them aware of the material facts underlying their claims" and, thereafter were not diligent in ensuring the accuracy of their benefit awards.  (D.I. 52 at 10–16).  In response, Plaintiffs contend that documents they received did not amount to a "clear repudiation" of their benefits and accordingly, they could not have reasonably discovered any actionable harm.  (D.I. 58 at 6–20.).  Although this is a close call, I conclude that a genuine dispute of material fact regarding Plaintiffs' diligence precludes summary judgment.

Federal law governs the accrual date for an ERISA non-fiduciary claim.  *Romero*, 404 F.3d at 221; *Miller*, 475 F.3d at 520 (holding in non-fiduciary ERISA claim case that "the accrual date for federal claims is governed by federal law, irrespective of the source of the limitations period.").  "In the ERISA context, a non-fiduciary cause of action will generally accrue when a party's claim for benefits has been formally denied."  *Christian v. Honeywell Ret. Ben. Plan*, 582 F. App'x 103, 104 (3d Cir. 2014) (citing *Romero*, 404 F.3d at 222).  "Under the 'clear repudiation' rule, however, an 'event other than a denial' can trigger the statute of limitations, 'as long as it is (1) a repudiation (2) that is clear and made known to the beneficiary.'"  *Id.* (quoting *Miller*, 475 F.3d at 521).

### i.    Repudiation

"[A]n underpayment can qualify as a repudiation because a plan's determination that a beneficiary receive less than his full entitlement is effectively a partial denial of benefits. Like a denial, an underpayment is adverse to the beneficiary and therefore repudiates his rights under a plan."  *Miller*, 475 F.3d at 521 (citing 29 C.F.R. § 2560.503–1(m)(4) (defining "adverse benefit determination" to include "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part ) for, a benefit")).

18

Defendants repudiated Mr. Manning's claim when he received a retirement kit informing him that Defendants would use Plan SBO factors that would cause his SBO benefits to not be "actuarially equivalent" to benefits he would have received under an SLA. Similarly, with respect to the Hamrick Plaintiffs, Defendants repudiated the Hamrick Plaintiffs' claim when they informed them via their retirement kits that Defendants would use Plan's ILO factors that would cause their benefits to be excessively reduced under the ILO calculation. All of Plaintiffs' claims to increased benefits were also repudiated they began receiving their miscalculated awards. *Miller*, 475 F.3d at 522 ("The award he began receiving in 1987 constituted a repudiation of his right to greater payment under the LTD plan."). These instances were "effectively a partial denial of benefits" that Plaintiffs now claim they are owed. *Dix*, 540 F. App'x at 133 (quoting *Miller*, 475 F.3d at 520–21).

Plaintiffs nevertheless argue there was no repudiation because "Plaintiffs' receipt of the benefits to which they were entitled under the Plan is not a repudiation." (D.I. 58 at 7). But in *Dix*, the Third Circuit found that a defendant's communication to a beneficiary repudiated the beneficiary's claim even though the benefits calculation was performed consistent with the governing plan document. There, the plaintiff alleged that a plan violated ERISA for failing to provide a COLA value when calculating lump sum distributions, and the Third Circuit found that the plan-defendant had repudiated the plaintiff's claim when informing him that "if he elected to receive a lump sum payment, he would receive a one-time payment of $505,495 and he would not receive any future benefits"—that is, receive a lump sum payment consistent with the plan's terms, but not consistent with ERISA's requirements. *Dix*, 540 F. App'x at 133; *see also Dix v. Total Petrochemicals USA, Inc., Pension Plan*, No. 10–3196 (JBS/JS) (D.N.J.) at D.I. 1 ¶ 24 (complaint).

Having found repudiation, I turn to whether the repudiation was clear and made known to Plaintiffs.

### ii.    Clear and Made Known to Beneficiary

Whether the repudiation was "clear" turns on whether Plaintiffs "knew or should have known they had a cause of action." *Dix*, 540 F. App'x at 133; *Christian*, 582 F. App'x at 104 ("a statute of limitations begins to run when a plaintiff discovers or should have discovered the injury that forms the basis of his claim."). "The key inquiry is whether the plan participant had reasonable discovery of the actionable harm." *Grasselino v. First Unum Life Ins. Co*., No. 08-635 (DMC), 2008 WL 5416403, *4 (D.N.J. Dec. 22, 2008) (quoting *Miller*, 475 F.3d at 522). "ERISA does not require 'plan participants and beneficiaries likely unfamiliar with the intricacies of pension plan formulas and the technical requirements of ERISA, to become watchdogs over potential plan errors and abuses,' but ERISA also does not relieve a plaintiff of the need to be 'vigilant' when conduct by the fiduciary alerts him or her to an adverse action." *Fiorentino v. Bricklayers & Allied Craftworkers Loc. 4 Pension Plan & the Bd. of Trs. of the Bricklayers & Allied Craftworkers Loc. 4 Pension Plan*, No. 15-02065-FLW-LHG, 2016 WL 5723660, at *23 (D.N.J. Sept. 30, 2016), *aff'd sub nom. Fiorentino v. Bricklayers & Allied Craftworkers Loc. 4 Pension Plan*, 696 F. App'x 594 (3d Cir. 2017) (quoting *Miller*, 475 F.3d at 522).

Defendants maintain that the materials Plaintiffs received in 2019 "amounted to clear repudiation of any additional benefits for Plaintiffs because they conveyed sufficient information for Plaintiffs to discover, or at least have a basis to investigate, the allegedly deficient SBO and ILO factors." (D.I. 52 at 12). With respect to Mr. Manning, Defendants maintain that his receipt of the retirement kit, the SPD, and access to the Plan document provided him with all of the information he needed to become aware of the claim he presently asserts—that is, "each participant

who selected an SBO is receiving less than an actuarially equivalent benefit because the formula that Defendants used to calculate SBOs – Appendix D – applies excessive reduction factors." (Manning Action, D.I. 1 ¶ 65).  The retirement kit informed Mr. Manning that if he elected an SBO, he would receive a reduced monthly benefit. (Manning Action, D.I. 55-8 at COR_ 00000531).  The Pension Calculation Statement displayed the difference between the SLA he was offered and the SBO, identified three plan formulas, identified the plan formula used in Mr. Manning's calculation, and informed Mr. Manning that he could obtain "more detail on the benefit formula" in the SPD and the DuPont Connection website.  (*Id.* at COR_00000522–24).  The Relative Value Notice explained that a 75% SBO was "approximately equal" in value to the SLA and that, "[t]he relative value comparison is made by comparing the value of each payment option available to the value of the Pension Benefit or Vested Benefit option. This comparison uses interest and average life expectancy assumptions. An interest rate of 5.00% was used for all payment options. Average life expectancies for all payment options were determined using the 1995 DuPont Pensioner/Survivor Mortality table.  The actual relative value of payments made to you'll depend on a number of factors, including your actual longevity and forms of payment available to you." (*Id.* at COR_00000534).  The SPD stated, "The cost for the Spouse Benefit Option is paid for by a reduction to your monthly pension payment. The amount of the reduction is actuarially determined, taking into account your age and the age of your Spouse as of your pension payment start date, the level of benefit elected (50% or 75%), and the Plan's investment-return rate." (Manning Action, D.I. 55-2 at COR_00001779).  The SPD informed Mr. Manning that he was entitled to a copy of the Plan document. (*Id.* at COR_00001836).  Appendix D of the Plan titled "Pension and Retirement Plan Joint and Survivor Option Factors" lists the factors he now challenges. (Manning Action, D.I. 55-5 at COR_00000721–26).

With respect to the Hamrick Plaintiffs, Defendants similarly contend that their receipt of the retirement kits, the SPD, and access to the Plan document provided them with the information to make each aware of the claims each asserts—that is, that "the conversion factors in Appendix B that Defendants used to calculate ILO benefits were . . . materially lower than those generated using the Treasury Assumptions." (Hamrick Action, D.I. 1 ¶ 56). The retirement kits explained that under the ILO, the Hamrick Plaintiffs' "benefit from the Plan will be adjusted so that the amount payable from the Plan before age 62 equals the sum of your Plan benefit plus estimated Social Security benefits after age 62. Your Pension and Retirement Plan benefit will be reduced at age 62 regardless of whether you have started receiving your Social Security benefits. The difference between your pre-62 and post-62 amounts will be our estimate of your Social Security benefits based on your DuPont earnings only." (D.I. 54-9 at COR_00000637). The Pension Calculation Statement estimated their Primary Social Security Benefit amounts that were to determine their ILO. (*Id.* at COR_00000629). The Relative Value Notice noted that ILO benefits were "approximately equal" in value to the Plan's SLA. The Relative Value Notice further provided that, "The relative value comparison is made by comparing the value of each payment option available to the value of the Pension Benefit or Vested Benefit option. This comparison uses interest and average life expectancy assumptions. An interest rate of 5.00% was used for all payment options. Average life expectancies for all payment options were determined using the 1995 DuPont Pensioner/Survivor Mortality table. The actual relative value of payments made to you'll depend on a number of factors, including your actual longevity and forms of payment available to you." (*Id.* at COR_00000644). The SPD explained the "Income Leveling Option": "Under this option, you receive a higher monthly pension from the Plan until age 62, when you become eligible for a Social Security benefit. Then, once you reach age 62 and Social Security

becomes payable, your benefit from the Plan is reduced so that your monthly income will be approximately 'level,' or the same, before and after you begin receiving Social Security benefits." (D.I. 54-12 at COR_00001780).   The SPD also contained an "Income Leveling Option Example" explaining that to calculate the ILO option, a participant's "Title I benefit is adjusted (using [the participant's] [Primary Social Security Benefit] and a plan factor based on [the participant's] age and the plan's investment return rate." (*Id.* at COR_00001781).   The Plan described the ILO: "An employee who retires prior to age 62 under the Early or Optional Retirement provisions (paragraph B or D) of this Section may elect to have his pension increased prior to age 62 and reduced thereafter, using the investment return rate determined in accordance with Appendix A and the factors in Appendix B, to provide, as far as practicable, a level retirement income before and after Federal Social Security payments begin." (D.I. 54-4 at COR_00000669).   Appendix A is titled, "Pension and Retirement Plan Determination of Investment Return Rate."      (*Id.* at COR_00000708).   Appendix B is titled, "Pension and Retirement Plan Income-Leveling Option Factors" and describes the calculation used: "1. The benefit payable prior to age 62 is equal to the Primary Social Security Benefit, as defined in Section IX times the appropriate factor from the following tables, plus the employee's pension. 2. The benefit payable after age 62 is equal to the benefit calculated above, less the Primary Social Security Benefit, as defined in Section IX." (Id. at COR_00000709).

Plaintiffs point out (D.I. 58 at 19), however, that a discrepancy exists in the provided materials.  While the retirement kits' Relative Value Notices state that mortality assumptions were taken from a 1995 DuPont Pensioner/Survivor Mortality table (Hamrick Action, D.I. 54-9 at COR_00000644; Manning Action, D.I. 55-8 at COR_00000534), the Plan document states that, "The actuarial reduction or actuarial increase will be calculated using: . . . (b) mortality rates for

pensioners and for survivors using, respectively, the 1985 DuPont Pensioner Mortality Table and the 1985 DuPont Survivor Mortality Table." (Hamrick Action, D.I. 54-4 at COR_00000689; Manning Action, D.I. 55-5 at COR_00000689). The Plan does not reference a mortality table from 1995.

According to Plaintiffs, reference to a 1995 mortality table means that "the Relative Value Disclosure did not put Plaintiffs on notice" of their claims—that is, that any repudiation was not clearly made known to them. (D.I. 58 at 19).[9] But Defendants say that the reference to the 1995 mortality table amounted to a "red flag" that should have prompted Plaintiffs to investigate their benefit award further, particularly in view of their claims that Defendants used an outdated mortality assumption in violation of ERISA. (*Id.* at 19). The parties agree that none of the Plaintiffs requested a copy of the Plan document.

Although a close call, I conclude that a genuine dispute of material fact exists as to whether references to a 1995 mortality table in the Relative Value Notices should have put Plaintiffs on notice of their claims. In their complaints, Mr. Manning and the Hamrick Plaintiffs plead that Defendants used "outdated" mortality assumptions. (Manning Action, D.I. 1 ¶ 72, "In sharp contrast to DuPont's regular updates of the mortality assumption used to calculate Plan liabilities, DuPont continued to use Appendix D's excessive reduction factors that were based on an outdated, unreasonable mortality assumption to calculate participants' actual benefit amounts;" Hamrick Action, D.I. 1 ¶ 6, "Defendants instead used an antiquated formula comprised of an interest rate that was higher than the 'applicable interest rate,' and a mortality table that DuPont developed in 1985 that is materially different from the 'applicable mortality table.'"). For limitations purposes,

---

[9]   Plaintiffs do not argue that the Plan, retirement kits, SPDs, or any other documents they received were ambiguous.

however, they argue that none of Defendants' disclosures, including the Relative Value Notices, put Plaintiffs on notice of their claims because only via complex calculations could Plaintiffs have realized that their benefits were not actuarily equivalent. (D.I. 58 at 17-18). But it does not take a complex calculation to read a Plan-provided document and learn that Defendants are reducing benefits using a mortality table from 1995.

The question becomes whether Defendants' reference to a 1995 mortality table in the Relative Value Notice was sufficient to put alert Plaintiffs that something was amiss. Plaintiffs do not argue that Defendants intentionally concealed their use of the 1985 mortality table. Nor do Defendants address why the discrepancy exists.

This is a quintessential dispute of material fact that precludes summary judgment. On one hand, a reasonable juror could agree with Plaintiffs and conclude that the mere reference of a mortality table from 1995 was not so outdated such that it would call into question the calculations Defendants used to render Plaintiffs' SBO or ILOs actuarily equivalent to an SLA. Under that circumstance, Plaintiffs' claims are not time barred because any repudiation of their right to actuarily equivalent benefits was not "clear and made known" to them. *Fletcher*, 2011 WL 743459, at *9 (denying summary judgment on clear repudiation in part because fact dispute over whether certain documents "sufficiently apprised plaintiff of the need to further investigate his benefit calculation because something was amiss"); *Urlaub v*, 750 F. Supp. 3d at, 871 (denying summary judgment because while defendants argued that plaintiff received benefits packet explaining SLA-to-JSA conversion was calculated using a 1971 Mortality Table and plaintiffs' claims hinged on the 1971 table's outdatedness, plaintiff maintained that the same facts did not show plaintiffs "knew or were 'on notice' before bringing this action that their JSAs were improperly calculated" particularly because "[d]efendants have not shown that Plaintiffs have any

actuarial expertise"); *Whetstone v. Howard Univ.*, No. 23-2409 (LLA), 2024 WL 4164692, at *5 (D.D.C. Sept. 12, 2024) ("Courts tend to apply a fact-specific reasonableness inquiry to determine whether and when a plaintiff knew or should have known that his rights have been violated in this context, especially where benefits plans involve obscure or complex communications.").

On the other hand, a reasonable juror could agree with Defendants and conclude that the reference to a decades-old mortality table amounted to either a clear repudiation or a "red flag" that should have put Plaintiffs on notice that something was "amiss" with their benefit calculations, obligating them to exercise reasonable diligence to ensure the accuracy of their award by, for example, calling Defendants to obtain additional information or requesting a copy of the Plan document itself. Although Plaintiffs maintain that, "Nothing the Plaintiffs received put them on 'inquiry notice' to request a copy of the Plan Document" (D.I. 58 at 18), a reasonable juror could find that the Relative Value Notice should have—particularly in view of Plaintiffs' allegations that the mortality tables used were outdated. Under that circumstance, Plaintiffs' claims would be time-barred because Plaintiffs were not reasonably diligent. *See Dix*, 540 F. App'x at 135 (claim accrued when plaintiff had received plan documents, letter, and consent form repudiating plaintiff's claim to any additional benefits beyond a lump sum and deeming plaintiff should have known he had a cause of action because "[a] reasonably diligent person, who had received a calculation of his lump sum award and was deciding whether to accept it, easily could have investigated whether that estimate included the actuarial value of expected COLAs by calling the phone number provided in the . . . letter" and rejecting plaintiffs argument that "that he would have had to hire an attorney or an actuary to discover the purported mistake."); *Manus v. BP Corp. N. Am., Inc.*, 2013 WL 5278235, at *5 (E.D. Pa. Sept. 18, 2013) (claim accrued and was time-barred when plaintiff received underpayment in 1990 after he had received a pension estimate document

in 1985 entitling him to higher amount: "Plaintiff would not have had to make complex calculations to determine something was amiss. Instead, he would have had to look at the twenty percent difference between the estimate that he possessed and the benefit he received," and explaining that plaintiff "submitted no evidence as to his reasonable diligence; submitted no evidence of a deficient notice; submitted no evidence that he was misled at the time of his retirement, despite apparent suspicions; and, who had, in his possession a document that was clearly sufficient to arouse his suspicion that he was receiving twenty percent less in benefits than he thought he was owed"); *Grasselino*, 2008 WL 5416403, at *5 (granting motion for summary judgment on timeliness because "[b]y providing an award while simultaneously disclaiming future benefits, this letter provides 'reasonable discovery' warning to [plaintiff] that his entitlement to benefits beyond the twenty-four month limitation was being repudiated"), *accord Knight v. Int'l Bus. Machines Corp.*, No. 22-CV-4592 (NSR), 2024 WL 1466817, at *3 (S.D.N.Y. Apr. 4, 2024), *vacated and remanded sub nom. Knight v. IBM Pers. Pension Plan*, No. 24-1281, 2025 WL 1009175 (2d Cir. Apr. 3, 2025) (concluding plaintiff's claims accrued they received Pension Projection statements identifying interest rate and morality assumption, "which contained the material facts on which their statutory claims are now based").

Concluding that a jury must determine whether the Relative Value Notices' reference to a 1995 mortality table "sufficiently apprised plaintiff of the need to further investigate his benefit calculation because something was amiss," *Fletcher*, 2011 WL 743459, at *9, is consistent with Third Circuit jurisprudence obligating ERISA plaintiffs to exercise "reasonable diligence to ensure the accuracy of [their] award[s]." *Miller*, 475 F.3d at 523. Although ERISA does not require plan participants and beneficiaries "to become watchdogs over potential plan errors and abuses," *Romero*, 404 F.3d at 224 (internal quotation marks omitted), plan beneficiaries must "vigilant and

failure to investigate an erroneous benefit determination after receiving notice of a plan's calculation of benefits will not toll the statute of limitations." *Dix*, 2012 WL 6005011, at *10 (citing *Miller*, 475 F.3d at 523).

    *Dix* further illustrates this principle.  As detailed above, the plaintiff in *Dix* received statements of estimated benefits and a summary plan. The statements of estimated benefits estimated what plaintiff would receive monthly under different annuity payment options versus a lump sum payment. *Id.* at 131–32.  Both of the statements explained that plaintiff would receive annual cost of living adjustments if he selected to receive monthly annuity payments, but further provided: "You will not be entitled to this cost-of-living adjustment if you elect (with your spouse's written consent) to receive your . . . accrued benefit in the form of a lump sum." *Id.* at 132.  Plaintiff and his wife elected the lump sum payment and signed the consent form, which provided that plaintiff elected to receive "a single payment of the actuarial equivalent present value of the benefit that [he] would otherwise be entitled to receive in the form of monthly annuity payments" and acknowledging that they would have "no right or entitlement to any future benefits from the Plan" after the $505,495 payment. *Id.*  Years later, the Court of Appeals for the Seventh Circuit issued an opinion holding the failure of plaintiff's plan to include the present value of COLAs in lump sum distributions violated ERISA. *Id.*  After filing an administrative claim, which was denied, plaintiff sued the plan in district court alleging the plan's failure to include the present value of expected COLAs in his lump sum payment violated ERISA. *Id.*  The plan-defendant argued that plaintiff's claim was time-barred, explaining that the language in the summary plan description, the statements of estimated benefits, and the plan itself (which was never sent to plaintiff, but was referenced in the consent form that he signed) "lends itself to only one

interpretation: COLAs would not be included in any form if he chose a lump sum payment." *Id.* at 134.

The Third Circuit agreed with the plan, concluding that "the language in the documents that [plaintiff] . . . receive[d] was clear enough to put him on notice of the repudiation." *Id.* at 134–35 n.3. At the time plaintiff signed the consent form, the Third Circuit reasoned that plaintiff knew that by choosing the lump sum payment he would have "no right or entitlement to any future benefits from the Plan." *Id.* at 134. Further, the Third Circuit emphasized that the statement of estimated benefits and the summary plan description plaintiff he had received, in addition to the plan document Moreover the statements—"which were conspicuously displayed in italics and boldface type in the original documents—raise significant red flags at the very least." *Id.* The Third Circuit explained: "[E]ven if this language could be subject to two different interpretations, the most reasonable interpretation of the emphasized text is that a person selecting the lump sum payment will not receive any compensation for COLAs at all," such that "[a] reasonably diligent person, who had received a calculation of his lump sum award and was deciding whether to accept it, easily could have investigated whether that estimate included the actuarial value of expected COLAs by calling the phone number provided in the . . . letter" plaintiff received. *Id.* The Third Circuit rejected the plaintiff's argument "that he would have had to hire an attorney or an actuary to discover the purported mistake." *Id.* at 135.

In view of *Dix* and the Third Circuit's expectation that plaintiffs act with reasonable diligence, I reject Plaintiffs' argument that "the disclosures they received could not have caused their claims to accrue because those documents did not disclose "(1) the assumptions underlying the appendices used to calculate their benefits or (2) the present values of their benefits." (D.I. 58 at 14; *id.* at 11, "Plaintiffs – none of whom are actuaries – cannot be expected to 'eyeball' a benefit,

29

realize that is not actuarially equivalent, thereby causing their claims to accrue."). Plaintiffs seek to avoid the time-bar altogether by characterizing their claims as "complex actuarial claims" (D.I. 58 at 11) such that they only "knew their benefits were excessively reduced until they spoke with their attorneys." (*Id.* at 15).[10] But to accept this view would eviscerate the Third Circuit's direction that claimants "exercise reasonable diligence in investigating the accuracy of a benefit determination because . . . 'a statute of limitations not based on reasonable discovery is effectively no limitation at all.'" *Dix*, 540 F. App'x at 134 (quoting *Miller*, 475 F.3d at 522). Thus, the there is a question of fact as to whether inclusion of an outdated mortality table in the Relative Value Notice was a sufficient red flag to give Plaintiffs "reasonable discovery of the actionable harm." *Miller*, 475 F.3d at 522); *Dix*, 540 F. App'x at 133 (the relevant question is what was "clear and made known" to participants through disclosures).[11] And that question goes to the jury.

---

[10]     Plaintiffs rely on non-Third Circuit authority to argue that there can be no clear repudiation when it would take "a heroic chain of deductions" for Plaintiffs to discern they were not receiving actuarially equivalent benefits based on the materials they had received. (D.I. 58 at 11, citing *Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 207 (2nd Cir. 2017) (declining to find plaintiffs were on constructive notice because it would have required plan participants to make "a heroic chain of deductions" based on "opaque guidance" to deduce problem in benefit calculations); *Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718, 729 (D.C. Cir. 2012) (distinguishing the simple percentage-of-earnings calculation in *Miller* and declining to find clear repudiation because beneficiaries "would have needed to apply complex law to complex facts."); *Scott v. AT&T Inc.*, 790 F. Supp. 3d 781, 797 (N.D. Cal. 2025) (denying summary judgment on clear repudiation rule because "evidence on which AT&T relies does not establish that plaintiffs had 'reason to know' their claims were denied at the time they commenced benefits")). While Plaintiffs seem to rely on these cases to suggest that there was no clear repudiation as a matter of law, whether it takes a "heroic chain of deductions" to read a Plan-provided document or to learn that Defendants are reducing benefits using a mortality table from 1995, and then exercise the requisite diligence is a question of fact.

[11]     Defendants argue that Plaintiffs claims should accrue, as a matter of law, when "Plaintiffs had been made aware of or should have discovered all of the material facts underlying these claims." (D.I. 52 at 11). Defendants do not cite any Third Circuit authority supporting this standard, and at least one district court has rejected it. *Martin v. Prudential Ins. Co. of Am.*, No.

* * *

Accordingly, because there is a genuine dispute of material fact as to whether Plaintiffs exercised "reasonable diligence to ensure the accuracy of [their] award[s]," *Miller*, 475 F.3d at 523, I recommend denying Defendants' motion for summary judgment without prejudice to raise timeliness at trial.

## IV.    CONCLUSION

For the reasons set forth above, I recommend denying Defendants' motion for summary judgment without prejudice to Defendants' raising timeliness at trial, denying as moot Plaintiffs' motion to supplement record, and denying as moot Defendants' motion for leave to file a sur reply.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.


Dated: February 9, 2026

_____
Laura D. Hatcher
United States Magistrate Judge

_____

12-6208 ES, 2013 WL 3354431, at *6 (D.N.J. July 2, 2013) ("Plaintiff's argument that his claim accrued on November 30, 2011, when he had all the necessary pieces of information to discover that Prudential miscalculated his benefits, has no merit."). I do not consider whether it applies here as I have concluded that, consistent with *Dix*, a genuine dispute of material fact precludes finding whether Plaintiffs' claims accrued at this juncture.